

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-9-2001

# United States v. Watson

Precedential or Non-Precedential:

Docket 00-2826

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"United States v. Watson" (2001). *2001 Decisions.* Paper 177.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/177

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 9, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 00-2826

UNITED STATES OF AMERICA

v.

BRUCE WATSON
aka George Flamer

       Bruce Watson,
       Appellant

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 98-cr-00147-1)
District Judge: Honorable Thomas I. Vanaskie,
Chief Judge

Argued: March 14, 2001

Before: RENDELL, AMBRO and BRIGHT,*
Circuit Judges

(Filed: August 9, 2001)

       Michael C. Kostelaba [ARGUED]
       630 North Main Street
       Wilkes-Barre, PA 18705
        Counsel for Appellant
       Bruce Watson

_____

* Honorable Myron H. Bright, United States Circuit Judge for the Eighth
Circuit Court of Appeals, sitting by designation.

George J. Rocktashel [ARGUED]
Office of United States Attorney
240 West Third Street, Suite 316
Williamsport, PA 17701
 Counsel for Appellee
United States of America

OPINION OF THE COURT

BRIGHT, Circuit Judge.

Bruce Watson ("Watson") appeals his judgment of
conviction and sentence for distribution and possession
with intent to distribute cocaine base (also known as crack
cocaine or crack) in violation of 21 U.S.C. S 841(a)(1). He
was convicted and sentenced to 210 months imprisonment,
three years of supervised release, and a $100 special
assessment. Watson argues that the District Court should
not have permitted narcotics agents to testify about general
drug culture practices on substantive and foundational
grounds in violation of Fed. R. Evid. 702, and that the
District Court erred in allowing expert testimony concerning
his mental state under Fed. R. Evid. 704(b). We reject
Watson's first argument. However, we reverse the judgment
of conviction and remand the case to the District Court
because the Government's experts improperly testified that
Watson's mental state was to distribute the cocaine base
rather than to use the narcotics personally.

I. BACKGROUND

In 1998, Pennsylvania law enforcement officers received
information that Watson was traveling on a Susquehanna
Trailways bus to Williamsport, Pennsylvania to purchase
drugs. Law enforcement officers Ronald Paret and Kirk F.
Schwartz met the bus in Lehighton, boarded the bus,
publicly announced that they were law enforcement officers
conducting a drug investigation, and that passenger
cooperation would be appreciated but was not required.

Watson was sitting by himself. The officers asked him
some routine questions, Watson denied having a ticket, and
he denied having identification. Watson picked up a bag

2

lying on the seat next to him, began removing items from the bag, and a marijuana cigarette fell out. Watson admitted possession, a brief scuffle ensued, and Watson resisted arrest. After the officers restrained Watson they noticed a crumpled piece of paper on the floor next to him. The crumpled paper, which was from the Lycoming County Public Assistance Office in Williamsport, had Watson's name on it, and it contained crack.

The officers transported Watson to the Pennsylvania State Police barracks in Lehighton. During processing investigators recovered four packages of marijuana and approximately 100 small plastic bags. Watson explained that he took his bus trip to attend a funeral and that the plastic bags were for a friend. Laboratory tests revealed a total of 2.4 grams of crack cocaine and 7.42 grams of marijuana.

During the trial, Officer Schwartz provided testimony concerning the 100 plastic bags found on Watson:

> [MR. ROCKTASHEL:] Now, based on your experience and training of purchasing drugs and working as a Narcotics Investigator, have you formed an opinion, as to whether or not the substance contained in Government Exhibit 1 was possess [sic] with the intent to distribute, transfer or deliver or the intent to personally use that drug?
>
> MR. CASEY: Objection. This witness is not competent to testify as to the mental state of the Defendant. That's the jury's prerogative, and Federal Rule [of Evidence] 704(b) specifically precludes it.
>
> THE COURT: Overruled.
>
> MR. ROCKTASHEL: You may answer the question, sir.
>
> [MR. SCHWARTZ]: I believe it was possess [sic] with the intent to distribute to somebody else.

(App. at 58.)

Later, Officer Gordon Mincer testified that the crack found on Watson was consistent with someone selling cocaine rather than using it for personal consumption.

3

Mincer also testified about the 100 plastic bags found on Watson. Before Mincer provided his testimony, the District Court overruled Watson's objection under Fed. R. Evid. 704(b). Mincer provided the following testimony:

> [MR. ROCKTASHEL:] Now, you've had a chance to look at Government Exhibit 1 and Government Exhibit 7. And I'd ask, having reviewed those, have you formed an opinion, as to whether or not the substance contained in Government Exhibit 1 was possessed with the intent to distribute, transfer or deliver versus the intent to personally consume that substance?
>
> . . . .
>
> [MR. MINCER:] Yes, sir. Based on my experience, through my undercover investigations, I've seen, on numerous occasions, subjects that have amounts of crack cocaine like this, as well as these packaging bags, which they were cutting off and packaging in these bags for resale, which I've also purchased.
>
> And that would be consistent with someone who is selling cocaine versus someone who would be using it for their personal use.

(App. at 89-90.)

The Government also called Agent Paret as a rebuttal witness to testify concerning the nature of Watson's bus travel itinerary. Agent Paret provided the following testimony:

> [MR. ROCKTASHEL:] With respect to the particular trip taken here, by Bruce Watson, have you formed an opinion as to whether or not that particular trip was taken for the purpose of distribution, transfer and delivery of drugs, as opposed to procurement of drugs for personal use?
>
> MR. CASEY: Objection. Again, that calls for a reading of the mind of the Defendant, as to the purpose of the trip. Again, the Court has instructed that could be consistent with experiences in the past, but the question, as posed, it goes beyond the competence of the witness.

4

MR. ROCKTASHEL: Your Honor, we're not proposing that he render an opinion, as to the Defendant's intent, but we're asking him to testify, with regard to particular circumstances and facts of the trip, the destination point, etc.

THE COURT: I'll overrule the objection. The testimony will be allowed for that limited purpose.

[MR. PARET:] Generally, a trip of a short nature like that, a 10-plus hour trip to Philadelphia, spending four hours there, on my experience, has been that they've gone into the city to purchase drugs to, ultimately, take back and resell at their starting point.

(App. at 160-61.)

II. DISCUSSION

The District Court had jurisdiction under 18 U.S.C. S 3231. We have jurisdiction under 28 U.S.C.S 1291. Watson's notice of appeal was timely filed.

We review the District Court's ruling on the admissibility of expert testimony for abuse of discretion. United States v. Bennett, 161 F.3d 171, 182 (3d Cir. 1998), cert. denied, 528 U.S. 819 (1999).

A.

Watson argues that the Government's experts' testimony was inadmissible because knowledge of the operations of narcotics dealers is not a proper field of expertise. Because Watson did not raise a contemporaneous Rule 702 objection to the expert testimony we review the admission of expert testimony for plain error, looking for errors that are "obvious, or . . . otherwise seriously affect the fairness, integrity[,] or public reputation of judicial proceedings." Government of the Virgin Islands v. Parrilla, 7 F.3d 1097, 1100 (3d Cir. 1993) (internal quotations omitted) (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)).

Under Rule 702, a witness may offer an expert opinion if he or she is "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702; see also In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741-46

5

(3d Cir. 1994). We have interpreted Rule 702's qualifications requirement liberally. Paoli, 35 F.3d at 741. "[W]here such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question . . . the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of [the relevant] discipline." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149 (1999) (internal citation omitted).

Although Rule 702 does not mention any qualifying specific fields of expertise, the advisory committee notes indicate that a wide variety of expert testimony is contemplated by the Rule:

> The rule is broadly phrased. The fields of knowledge which may be drawn upon are not limited merely to the "scientific" and "technical" but extend to all "specialized" knowledge. Similarly, the expert is viewed, not in a narrow sense, but as a person qualified by "knowledge, skill, experience, training or education." Thus within the scope of the rule are not only experts in the strictest sense of the word, e.g., physicians, physicists, and architects, but also the large group sometimes called "skilled" witnesses, such as bankers or landowners testifying to land values.

Fed. R. Evid. 702, Advisory Committee's Notes to 1972 Proposed Rule 702.

The courts that have considered this issue have recognized the operations of narcotics dealers as a proper field of expertise. It is well-established that government agents may testify to the meaning of coded drug language under Fed. R. Evid. 702. United States v. Gibbs , 190 F.3d 188 (3d Cir. 1999); see also United States v. Theodoropoulos, 866 F.2d 587, 590-91 (3d Cir. 1989), overruled on other grounds, United States v. Price, 76 F.3d 526 (3d Cir. 1996); United States v. Plunk, 153 F.3d 1011, 1017 (9th Cir. 1998) (noting that the jargon of the narcotics trade and drug dealers' code language are proper subjects of expert opinion), cert. denied, 526 U.S. 1060 (1999); United States v. Delpit, 94 F.3d 1134, 1145 (8th Cir. 1996) (same); United States v. Boissoneault, 926 F.2d 230, 232

(2d Cir. 1991) (same). In addition, "experienced narcotics agent[s] may testify about the significance of certain conduct or methods of operation to the drug distribution business, as such testimony is often helpful in assisting the trier of fact understand the evidence." United States v. Griffith, 118 F.3d 318, 321 (5th Cir. 1997) (quoting United States v. Washington, 44 F.3d 1271, 1283 (5th Cir. 1995), cert. denied, 514 U.S. 1132 (1995)). Thus, the operations of narcotics dealers have repeatedly been found to be a suitable topic for expert testimony because they are not within the common knowledge of the average juror. Theodoropoulos, 866 F.2d at 590-92. Therefore, we reject Watson's argument; knowledge of the operations of narcotics dealers is a proper field of expertise.

Moreover, the District Court did not err in allowing expert testimony from Schwartz, Mincer, and Paret. Agents Schwartz, Mincer, and Paret were well-qualified to testify concerning drug activity and the Government presented sufficient evidence to establish the reliability of their purported fields of expertise. Agent Schwartz testified that he made several hundred arrests for controlled substances offenses, he was familiar with drug packaging and distribution, he inspected drugs, drug paraphernalia, and he had participated in approximately 200 bus interdictions. Agent Mincer testified to his experience in executing search warrants for drugs, his undercover drug purchases, and his making more than 200 arrests for crack. Agent Paret testified about his experience as a United States Customs Inspector and as a drug investigator working for eight years on drug interdiction involving public transportation. The Government's experts each possessed specialized knowledge concerning drugs and drug interdiction and their testimony was helpful to the jury in understanding the evidence. Therefore, the District Court did not commit plain error when it admitted Agents Schwartz's, Mincer's, and Paret's testimony relating to the general operations of narcotics dealers.

B.

Next, Watson argues that the District Court erred in allowing expert testimony concerning Watson's mental state, i.e., that Watson intended to distribute the narcotics.

7

Under Fed. R. Evid. 704(b), no expert witness "testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone." Fed. R. Evid. 704(b). Rule 704(b) applies to all instances in which expert testimony is offered as to mental state or a condition constituting an element of the crime charged or defense thereto. Gibbs, 190 F.3d at 211 (applying Rule 704(b) to expert testimony by undercover narcotics officer in drug conspiracy prosecution).[1]

Expert testimony concerning the modus operandi of individuals involved in drug trafficking does not violate Rule 704(b). For example, a Government expert may testify about the meaning of narcotics code words. Theodoropoulos, 866 F.2d at 590–92; see also Boissoneault, 926 F.2d at 232–33 (same); United States v. Boyd , 55 F.3d 667, 671 (D.C. Cir. 1995) (holding that expert testimony concerning the modus operandi of individuals involved in drug trafficking does not violate Rule 704(b)). A Government expert may also testify about the quantity, purity, usual dosage units, and street value of narcotics. United States v. Safari, 849 F.2d 891, 895 (4th Cir.), cert. denied, 488 U.S.

_____

1. See also S. Rep. No. 225, 98th Cong., 1st Sess. 230 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3412–3413 ("[T]he rationale for precluding ultimate opinion psychiatric testimony extends beyond the insanity defense to any ultimate mental state of the defendant that is relevant to the legal conclusion sought to be proven. The Committee has fashioned its Rule 704 provision to reach all such `ultimate' issues, e.g., premeditation in a homicide case, or lack of predisposition in entrapment."); United States v. Boyd, 55 F.3d 667, 671 (D.C. Cir. 1995) (holding Rule 704(b) applies to all instances in which expert testimony is offered as to mental state or condition constituting an element of the crime charged or defense thereto); United States. v. Orr, 68 F.3d 1247, 1252 (10th Cir. 1995), cert. denied, 516 U.S. 1064 (1996) (determining that "the rule prohibits an expert witness from testifying that a defendant did or did not possess the requisite mental intent at the time of the crime"); United States v. DiDomenico , 985 F.2d 1159, 1165 (2d Cir. 1993) (determining that in prosecution for interstate transportation of stolen goods, the trial court did not err in excluding under Rule 704(b) expert testimony as to whether defendant knew goods were stolen).

945 (1988). And, an expert may testify about the various counter-surveillance techniques used by drug dealers to avoid detection by the police. United States v. de Soto, 885 F.2d 354, 360 (7th Cir. 1989).

There is, however, "a [fine] line that expert witnesses may not cross." United States v. Mitchell, 996 F.2d 419, 422 (D.C. Cir. 1993). It is well established that experts may describe, in general and factual terms, the common practices of drug dealers. See Boyd, 55 F.3d at 671 (citing cases). Expert testimony is admissible if it merely "support[s] an inference or conclusion that the defendant did or did not have the requisite mens rea, so long as the expert does not draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion does not necessarily follow from the testimony." United States v. Bennett, 161 F.3d 171, 183 (3d Cir. 1998) (quoting United States v. Morales, 108 F.3d 1031, 1038 (9th Cir. 1997)). "It is only as to the last step in the inferential process--a conclusion as to the defendant's mental state--that Rule 704(b) commands the expert to be silent." United States v. Dunn, 846 F.2d 761, 762 (D.C. Cir. 1988).

Rule 704(b) may be violated when the prosecutor's question is plainly designed to elicit the expert's testimony about the mental state of the defendant, Boyd , 55 F.3d at 672, or when the expert triggers the application of Rule 704(b) by directly referring to the defendant's intent, mental state, or mens rea, United States v. Lipscomb , 14 F.3d 1236, 1240 (7th Cir. 1994). Rule 704 prohibits "testimony from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite mens rea." Bennett, 161 F.3d at 182 (quoting Morales, 108 F.3d at 1037).

Watson argues that the Government violated Rule 704(b) because its three witnesses testified as to Watson's mental state. First, Watson argues that Officer Schwartz's testimony concerning the purpose for the 100 plastic bags found on his person violated Rule 704(b). We agree. The prosecutor, Mr. Rocktashel, pushed his questions too far and he repeatedly elicited expert testimony in violation of Rule 704(b). Mr. Rocktashel's question to Officer Schwartz was plainly designed to elicit the expert's testimony about

Watson's intent. Mr. Rocktashel's repeated references to Watson's intent elicited the offending response from Officer Schwartz when he testified that, in his opinion, Watson "possess[ed] with the intent to distribute to someone else."

Second, Watson argues that the colloquy between Mr. Rocktashel and Officer Mincer elicited testimony that violated Rule 704(b). Prosecutors may not circumvent Rule 704(b) by repeatedly referring to a defendant's intent in a question to an expert. Mr. Rocktashel's repeated invocation of the word "intent," framed Mincer's "Yes sir," response in such a way that the necessary inference to be drawn from Mincer's response was that Watson possessed crack with the intent to distribute it. Therefore, Mincer's "Yes sir" response violated Rule 704(b).

Third, Watson argues that Agent Paret's rebuttal testimony concerning the nature of Watson's bus travel itinerary violated Rule 704(b). The prosecutor may not elicit expert testimony on the ultimate issue of fact; that is for the jury alone to decide. Fed. R. Evid. 704(b). In this case, Mr. Rocktashel's question to Paret, like his questions to Schwartz and Mincer, was designed to elicit testimony about Watson's intent. Rocktashel asked whether Watson's particular "trip . . . [was] for the purpose of distribution, transfer and delivery of drugs, as opposed to procurement of drugs for personal use?" Although Agent Paret did not specifically refer to Watson in his response, and used the collective "they" when indicating "they'd gone into the city to purchase drugs to, ultimately, take back and resell at their starting point," Paret's opinion necessarily implies that the purpose of Walker's short bus trip was to distribute drugs rather than to obtain drugs for personal use. The unmistakable import of Agent Paret's opinion was that Watson intended to buy drugs to distribute them. Not only did Paret's opinion violate Rule 704(b), but it clearly went beyond Paret's competence, as counsel noted in his objection. In addition, by letting this testimony stand as expert opinion, the District Court allowed Walker's credibility to be destroyed, because he testified that he was in Philadelphia to attend a funeral.

In sum, the Government violated Rule 704(b) by repeatedly eliciting from its experts testimony as to

10

Watson's mental state and the purpose of his actions. The defendant's intent is an ultimate issue of fact that the jury alone must decide. Fed. R. Evid. 704(b). In addition, even if we assume, for the sake of argument, that the Government's experts were qualified to speak about Watson's mental condition at the time of the offense, Rule 704(b) prohibits any expert from testifying about the defendant's actual mental state. Fed. R. Evid. 704(b). E.g., United States v. Pohlot, 827 F.2d 889 (3d Cir. 1987) (allowing the introduction of expert testimony on defendant's mental condition at the time of the offense but limiting expert testimony to factual description of the defendant's mental capacity), cert. denied, 484 U.S. 1011 (1988). Of course, narcotics experts may testify about drug dealing, but they are in no way qualified to testify about a defendant's mental condition. Therefore, the District Court erred when it admitted the Government's expert testimony concerning Watson's mental state. That evidence went to the heart of the Government's case and plainly prejudiced defendant.

III. CONCLUSION

For the foregoing reasons, we will REVERSE the Judgment and Commitment Order and REMAND the case to the District Court for further proceedings.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

11