

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-3-2003

# USA v. Coleman

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3105

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Coleman" (2003). *2003 Decisions.* Paper 489.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/489

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-3105

UNITED STATES OF AMERICA

v.

RANDY COLEMAN,
a/k/a STEVEN JOHNSON,
a/k/a STEVEN LEWIS,
a/k/a KHABIR HAFIZ

Randy Coleman,

Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 01-cr-00038)
District Judge: Honorable Clarence C. Newcomer

Submitted Under Third Circuit LAR 34.1(a)
April 24, 2003

Before: SCIRICA*, AMBRO and GARTH, <u>Circuit Judges</u>

(Opinion filed: June 3, 2003)

*Judge Scirica commenced his term as Chief Judge on May 4, 2003.

---

OPINION

---

AMBRO, Circuit Judge

Randy Coleman challenges on four grounds his conviction in the United States

District Court for the Eastern District of Pennsylvania for various crimes related to his

possession of a firearm and to drug trafficking.  He argues, in particular, that the District

Court improperly denied his motion to suppress evidence obtained as the result of a

warrantless entry made in violation of the Fourth Amendment; that it erred in admitting

certain hearsay statements under the "excited utterance" exception to the hearsay rule;

that an expert witness inappropriately testified concerning Coleman's mental state; and

that the Court abused its discretion by admitting evidence of propensity to commit a

crime.  We affirm.

BACKGROUND

Around 12:30 a.m. on April 6, 2000, Shawna Coleman and another woman, both

appearing "visibly upset, nervous," "concerned," and "talking fast," approached a police

officer, Sergeant Nouman Shubbar, sitting in a police car in a parking lot.  Shawna told

Sergeant Shubbar that she believed her sister, Avery Coleman, was being beaten and held

against her will by her boyfriend, Randy Coleman, in an apartment located at 729 East

Chelten Ave., less than a block away.

Shawna further told Shubbar that she had been to the apartment earlier that

2

evening and had seen "a lot of blood" in the bedroom. She may also have said that, on the initial trip to the apartment that evening, she had arrived to find the front door standing open, no one at home, and Coleman's car not in the apartment parking lot. Shawna left to look for her sister, and when she returned to the apartment she recognized Coleman's car in the apartment lot. Regardless whether Shawna reported these events to Shubbar, she later recounted the events this way. In any event, she pleaded that Shubbar investigate the matter urgently.

Shubbar called for backup, which arrived in the form of Officers Raymond Heim and Robert Harris. The three officers walked over to 729 East Chelten Ave. and entered the common area of the building. Shubbar began walking up to the second floor and saw Coleman look down the stairs at the officers, run into an apartment, and slam the door shut.

Shubbar could hear from inside the apartment "a female crying, a lot of footsteps, some kind of commotion, muffled voices, [and] yelling." The officers began knocking loudly on the door and repeatedly yelling, "Police, open the door." No one answered. This situation continued for three to five minutes, during which time another officer arrived. The noise in the apartment suddenly ceased, which made Shubbar "really . . . concerned" for the safety of the woman just heard crying inside.

The officers had not obtained a warrant to enter the apartment. Nonetheless, after a warning, Harris kicked down the door of the apartment. The officers entered and saw

3

Avery Coleman sitting on a couch and holding her young son. Avery had bruises on her neck. She was "visibly crying," "upset," "talking fast," "obviously afraid," "shaking," and "almost hyperventilating." Avery said that her boyfriend had held her against her will, "had beat her up, and that she wanted . . . the shotgun out of the apartment." She also said that her boyfriend "point[ed] a shotgun, [and] threatened to kill her."

Coleman then came out of the bedroom from the rear of the apartment. Either Avery or Shawna led the police back to the bedroom and pointed out a shotgun under the bed. Shubbar retrieved the shotgun. In so doing, Shubbar saw also under the bed numerous plastic ziplock bags that appeared to contain crack cocaine.

The police arrested Coleman. They obtained a warrant to search the apartment for narcotics, which they found along with packaging materials and a scale. The District Court denied Coleman's motion on Fourth Amendment grounds to suppress the shotgun and the narcotics and paraphernalia. Subsequent to Randy's arrest and while he remained in police custody, but prior to the trial in this case, Avery Coleman died from gunshot wounds in what appears to be a death unrelated to this case.

At Randy Coleman's trial, the jury convicted him of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); possession of a short-barreled shotgun in furtherance of a drug trafficking crime, in violation of the same; possession with intent to distribute more than five grams of cocaine base (crack cocaine), in violation of 21 U.S.C. § 841(a)(1); and possession of a firearm by a convicted felon, in

4

violation of 18 U.S.C. § 922(g)(1). After denying Coleman's motion for a new trial, the Court sentenced him to 220 months in prison.

Coleman timely appealed. The District Court had jurisdiction under 18 U.S.C. § 3231, and we have appellate jurisdiction under 28 U.S.C. § 1291.

DISCUSSION

I.    Fourth Amendment

Coleman contends that the District Court erred in denying his pretrial motion to suppress evidence, namely the firearm and narcotics, on the ground that exigent circumstances did not exist to justify the police's warrantless entry into the Chelten Ave. apartment. "This Court reviews the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercises plenary review of the District Court's application of the law to those facts." *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).

Exigent circumstances justify a warrantless entry where "officers reasonably . . . believe that someone is in imminent danger," *Parkhurst v. Trapp*, 77 F.3d 707, 711 (3d Cir. 1996), and that they must act to avert the danger. Shawna Coleman's description of the situation at the Chelten Ave. apartment, including the blood she had earlier seen and her belief that her sister was being held and beaten – corroborated to some extent by Randy Coleman's reaction at the sight of the officers and to a much greater degree by the disturbing sounds heard from inside the apartment, and then the sudden, complete silence

5

– reasonably led the officers to believe that the woman they heard crying in the Chelten Ave. apartment was "in imminent danger." *See United States v. Myers*, 308 F.3d 251, 264 (3d Cir. 2002) (stating that an anonymous 911 call concerning a disturbance in an apartment involving a person with a gun and a report from a "12 year old girl standing two feet outside her residence," the same apartment, "certainly created a sufficient exigency to allow [the officer] to enter her home to investigate").

The District Court therefore did not err in admitting the evidence.

II.    Hearsay Statements

Two officers testified that, almost immediately after the police entered the apartment, Avery Coleman said words to the effect that Randy Coleman had held her against her will and "beat her" and that she wanted "the shotgun out of the apartment." At least one officer also testified that Avery had shown the officers where the gun was kept under the bed. Coleman asserts that the admission of this testimony under the excited utterance exception to the hearsay rule violated his Sixth Amendment right to confront the witnesses against him. We review for abuse of discretion the District Court's decision to admit evidence. *See United States v. Brown*, 254 F.3d 454, 458 (3d Cir. 2001). But the District Court's consideration of the Constitution's Confrontation Clause and the Federal Rules of Evidence issues raised in this case receives plenary review. *See United States v. Mitchell*, 145 F.3d 572, 576 (3d Cir. 1998).

A hearsay statement that falls within a "firmly rooted" hearsay exception, such as

6

an "excited utterance," "carr[ies] sufficient indicia of reliability to satisfy the reliability requirement posed by the Confrontation Clause." *White v. Illinois*, 502 U.S. 346, 355 n.8 (1992). A hearsay statement qualifies as an excited utterance if (1) there is a startling occasion, (2) the statement relates to the circumstances of the startling occasion, (3) the declarant appears to have had the opportunity personally to observe the events, and (4) the statement was made before the declarant had time to reflect and fabricate. *Mitchell*, 145 F.3d at 576.[1] The District Court carefully analyzed the testimony and concluded that the "violent domestic dispute" constituted a startling event, that Avery (described as "visibly crying," "upset," "talking fast," "obviously afraid," "shaking,"and "almost hyperventilating") was under the stress of the event when she made the statements, and that she had not had time to reflect or fabricate. Avery also personally observed the events she described.

Coleman does not seriously dispute the Court's reasoning, and we see no error in it. He asserts, instead, that even if the statements otherwise met the requirements of an excited utterance, they lacked sufficient indicia of reliability. He points to a statement taken by the police some time after the night in question in which Avery said that her sister had shown the officers where to find the gun. According to Coleman, this later statement "directly contradicts" the admitted hearsay. Coleman did not, however, object

---

[1] *See also* Fed. R. Evid. 803 ("The following [is] not excluded by the hearsay rule . . . : (2) . . . A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.").

to the District Court concerning the admission of the testimony at issue because, we presume, he believed other evidence contradicted it. Accordingly, the decision to admit that evidence despite the existence of contradictory evidence is reviewed for plain error. *See United States v. Olano*, 507 U.S. 725, 732 (1993). There is no such error here.

We have already determined that the testimony falls within the excited utterance hearsay exception. Coleman seeks to have us also apply a heightened reliability analysis used by our Court in *United States v. Bailey*, 581 F.2d 341, 349 (3d Cir. 1978). But *Bailey* involved the residual hearsay exception rule, which requires a case-by-case analysis of the "guarantees of trustworthiness" of the statement.[2] Such an analysis is not necessary where the court has determined, as here, that the statement fits the requirements of a "firmly rooted" exception. *White*, 502 U.S. at 355-357 & n.8.

With this context, the District Court did not err or otherwise abuse its discretion by admitting the testimony of the officers concerning the statements made by Avery almost immediately after the officers entered the apartment.

III. Expert Testimony

The following colloquy took place at trial between the prosecution and its narcotics-operation expert witness, Detective Matthew McDonald:

---

[2] The residual hearsay exception permits the admission of a hearsay statement that does not meet the requirements of a firmly rooted hearsay exception if certain conditions, including that it have "circumstantial guarantees of trustworthiness," are met. *See* Fed. R. Evid. 807.

8

> Q: Detective McDonald, could you please explain to the jury whether the narcotics that are marked as Government's Exhibit 3, based upon their packaging and what they are, appear to you, based on your expertise, to be a distribution quantity of narcotics or a personal use quantity of narcotics and explain why?

> A: Certainly, Ma'am. I have no doubt that the exhibits in front of me were possessed with the intent to deliver.

Coleman contends that this testimony violates Fed. R. Evid. 704(b). Because he did not object to this testimony below, we review for plain error. *See Olano*, 507 U.S. at 732.

Rule 704(b) prohibits expert testimony concerning "whether the defendant did or did not have the mental state or condition constituting an element of the crime charged . . . ." *Id.* It "may be violated when the prosecutor's question is plainly designed to elicit the expert's testimony about the mental state of the defendant . . . or when the expert triggers the application of Rule 704(b) by directly referring to the defendant's intent, mental state, or mens rea . . . ." *United States v. Watson*, 260 F.3d 301, 309 (3d Cir. 2001). The Rule also "prohibits 'testimony from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite mens rea.'" *Id.* (quoting *United States v. Bennett*, 161 F.3d 171, 182 (3d Cir. 1998)).

In *Watson*, the following exchanges occurred:

> Prosecutor: Now, based on your experience and training of purchasing drugs and working as a Narcotics Investigator, have you formed an opinion, as to whether or not the substance contained in Government Exhibit 1 [100 plastic bags] was possess [sic] with the intent to distribute, transfer or deliver or the intent to personally use that drug?

9

[Objection made by defense counsel. Overruled.]

Expert: I believe it was possess [sic] with the intent to distribute to somebody else.

*Id.* at 305. Similarly:

Prosecutor: Now, you've had a chance to look at Government Exhibit 1 and Government Exhibit 7 [narcotics]. And I'd ask, having reviewed those, have you formed an opinion, as to whether or not the substance contained in Government Exhibit 1 was possessed with the intent to distribute, transfer or deliver versus the intent to personally consume that substance?

Expert: Yes, sir. Based on my experience, through my undercover investigations, I've seen, on numerous occasions, subjects that have amounts of crack cocaine like this, as well as these packaging bags, which they were cutting off and packaging in these bags for resale, which I've also purchased. And that would be consistent with someone who is selling cocaine versus someone who would be using it for their personal use.

*Id.* at 305-06. And, again:

Prosecutor: With respect to the particular trip taken here, by [the defendant], have you formed an opinion as to whether or not that particular trip was taken for the purpose of distribution, transfer and delivery of drugs, as opposed to procurement of drugs for personal use?

[Objection. Overruled.]

Expert: Generally, a trip of a short nature like that, a 10-plus hour trip to Philadelphia, spending four hours there, on my experience, has been that they've gone into the city to purchase drugs to, ultimately, take back and resell at their starting point.

10

*Id.* at 306.  We held in *Watson* that "the Government violated Rule 704(b) by repeatedly

eliciting from its experts testimony as to Watson's mental state and the purpose of his

actions."  *Id.* at 310.

Here, in contrast, the prosecutor did not ask the expert to comment on the "intent"

with which the narcotics were possessed, asking instead whether the narcotics appeared to

be a distribution or personal-use quantity.  Although the expert nevertheless answered the

question in terms of the intent with which the drugs were possessed, we hold that this

single reference to Coleman's intent does not rise to the level of plain error.[3]

IV.    Propensity Evidence

---

   [3]    We note, however, that the recent decision in *United States v. Martin*, 186 F. Supp.
2d 553 (E.D. Pa. 2002), *aff'd*, 2003 WL 1879218 (3d Cir. 2003) (non-precedential
opinion), involved strikingly similar testimony by the same expert, Detective McDonald.
In *Martin*, the following colloquy took place:

> Prosecutor: [H]earing all the evidence and reviewing the
> relevant documents and testimony and exhibits, can you form
> an opinion as to . . . whether the amounts of drugs in this case
> was found [sic] in the lab, 24.49 grams, was consistent with
> possession with intent to distribute?
> Detective McDonald: Yes, sir, I have no doubt that the drugs
> possessed in this case were possessed with the intent to
> distribute.

*Id.* at 558-59.  *Martin* held as well that this testimony did not rise to the level of plain
error, even though, as here, Detective McDonald also made "reference . . . to the
defendant's state of mind . . . ."  *Id.* at 560.
   Because of Detective McDonald's apparent penchant for discussing, even when
not asked to do so, the defendant's intent with regard to the possession or distribution of
narcotics, we believe it necessary to emphasize here that Rule 704(b) not only prohibits
questions concerning that intent but also forbids an expert from "directly referring to the
defendant's intent, mental state, or mens rea . . . ."  *Watson*, 260 F.3d at 309.

11

Finally, Coleman argues that the admission of testimony that he had previously possessed a shotgun similar in appearance to the one involved in this case and had purchased plastic bags with "red apples" on them, like those found here (and used for narcotics packaging), violated Fed. R. Evid. 404(b) as evidence of prior acts used "to show action in conformity therewith." *Id.* "We review the District Court's decision to admit evidence under Rule 404(b) for an abuse of discretion . . . ." *United States v. Butch*, 256 F.3d 171, 175 (3d Cir. 2001).

Coleman put at issue during trial whether he had knowledge of, and thus possessed, the shotgun and narcotics found in the apartment in which he resided with Avery Coleman. The District Court admitted this evidence not to permit the prosecution to show Coleman's propensity to possess a firearm or narcotics, but instead "as proof of . . . knowledge" of their presence in the apartment, a permissible purpose pursuant Rule 404(b). *See United States v. Moorehead*, 57 F.3d 875, 878 (9th Cir. 1995) (holding prior possession of a firearm admissible to show knowledge for charged offense of possessing a similar weapon). Accordingly, the District Court acted well within its discretion in admitting this evidence.

## CONCLUSION

The District Court correctly concluded that the officers' entry into the Chelten Ave. apartment did not violate the Fourth Amendment and that Avery Coleman's statements to the police constituted admissible excited utterances. The admission of the

12

expert testimony referring on a single occasion to Coleman's intent to distribute the narcotics did not rise to the level of plain error. And, finally, no abuse of discretion occurred in admitting testimony concerning Coleman's prior possession of a similar shotgun and plastic bags. Having rejected each of Coleman's arguments, we affirm.

_____

TO THE CLERK:

    Please file the foregoing Opinion.

By the Court,

   /s/Thomas L. Ambro
Circuit Judge