NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2467
_____

UNITED STATES OF AMERICA

v.

RAKAHN BURTON, a/k/a Rakhan Burton a/k/a Rak

Rakahn Burton,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 07-cr-00640-001)
District Judge:  Honorable Juan R. Sanchez
_____

Submitted Under Third Circuit LAR 34.1(a)
December 16, 2010

Before:  JORDAN, HARDIMAN and VAN ANTWERPEN, *Circuit Judges*.

(Filed: December 17, 2010)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

On February 2, 2009, Rakahn Burton was found guilty of distribution of crack

cocaine and conspiracy to distribute crack cocaine.  Burton appeals his conviction on

numerous grounds. He asserts that the District Court erred by refusing to suppress incriminating evidence seized during three separate searches, denying his motion to sever the counts against him arising from his drug dealing activity in 2005 and 2007, and permitting a narcotics expert to testify at his trial. We will affirm.

## I.    Background

### A.    *The Searches*

Burton asserts that drug evidence seized during three separate searches should be suppressed since those searches were conducted without probable cause: the search of a residence at 7545 Battersby Street in 2005; the search of a residence at 7209 Kindred Street in 2007; and the search of an Oldsmobile car in 2007 which was located in the driveway of the home in which Burton was arrested.

#### i.    *7545 Battersby Street*

In 2005, police officers searched 7545 Battersby Street pursuant to a warrant. An officer with years of narcotics investigation experience executed the affidavit for the search warrant for the Battersby residence and asserted that he believed evidence of illegal drug dealing would be found in the home. The basis for that belief included the following: the police received numerous anonymous complaints about drug activity at 7545 Battersby Street; narcotics officers observed individuals, including Burton, leave the house momentarily on numerous occasions to drop off black bags to drivers parked in front of the residence; when stopped for investigation, Burton gave a fictitious address even though officers had observed him entering the home with a key; and a search of the trash of the home had revealed various items consistent with the packaging and

distribution of illegal drugs, including small plastic bags and a box for a digital scale typically used by drug dealers. The search of the residence in fact did uncover illegal drugs and drug paraphernalia. The District Court denied Burton's motion to suppress that evidence.

### ii. *7209 Kindred Street*

In 2007, police officers and agents of the Drug Enforcement Agency ("DEA") searched 7209 Kindred Street pursuant to a warrant. A DEA agent executed the affidavit for the search warrant of the Kindred residence and asserted that he believed evidence of illegal drug dealing would be found in the home because of the following: a DEA confidential informant, who had been reliable in the past, identified Burton as a large volume cocaine dealer and stated that Burton stored drugs at his girlfriend's house and that Tyree Barnwell helped Burton deal drugs; Burton's girlfriend was observed entering and leaving the Kindred residence; undercover DEA agents purchased cocaine from Barnwell four times; Barnwell identified Burton as his partner and supplier of cocaine; Barnwell stated that he had seen Burton cooking crack cocaine inside the Kindred residence; and Barnwell admitted to picking up drugs from Burton at the Kindred residence on nine separate occasions. A search of 7209 Kindred Street revealed evidence that linked Burton to the distribution of crack cocaine. The District Court denied Burton's motion to suppress that evidence.

### iii. *The Oldsmobile*

When officers arrested Burton in September, 2007 at a residence in Coatesville, Pennsylvania, a white Oldsmobile was parked in the driveway of the home. Burton stipulated to the District Court that the officers who executed the arrest warrant had information that Burton and Barnwell used a white Oldsmobile to distribute crack cocaine. The arresting officers searched the car and found two packets of crack cocaine. The District Court denied Burton's motion to suppress that evidence.

### B. *Joinder*

Burton was initially charged with two counts relating to his distribution of crack cocaine in 2005. A superseding indictment added five charges against Burton and Tyree Barnwell relating to distribution of crack cocaine in 2007. Barnwell pled guilty on March 3, 2008. On March 13, 2008, Burton filed a motion pursuant to Federal Rules of Criminal Procedure 8(a) and 14(a) to sever the new counts against him. The District Court denied the motion, and Burton was tried on all counts of the superseding indictment.

### C. *Admission of Expert Testimony*

Seven months before trial, the government stated in a hearing before the District Court that it intended to call an expert witness on the use, production, and distribution of crack cocaine. Later, two weeks before trial and after plea negotiations between Burton and the government had ended unsuccessfully, the government formally disclosed to Burton the name of its expert witness, Detective Andrew Callaghan, and the topics of his anticipated testimony, as required by Federal Rule of Criminal Procedure 16. After

4

receiving the disclosure, Burton filed a motion in limine to exclude Callaghan's testimony on four grounds: that it was inadmissible under Federal Rule of Evidence ("FRE") 702 because it would be unreliable and would not assist the jury in any significant way; that it would be inadmissible under FRE 704(b) because it would address Burton's state of mind; that it would be inadmissible under FRE 403 because its prejudicial effect outweighed its probative value; and that the government did not provide adequate notice of its intent to call Callaghan as an expert witness. The District Court permitted Callaghan to testify as an expert over Burton's objections.

## II.   Discussion[1]

Burton argues that the District Court erred in denying his motions to suppress, his motion to sever, and his motion in limine to exclude Callaghan's testimony. We address each contention in turn.

### A.   *Motions to Suppress*

When reviewing a denial of a motion to suppress, "we review factual findings for clear error and exercise plenary review over the District Court's legal conclusions." *United States v. Mundy*, 621 F.3d 283, 287 (3d Cir. 2010). We adopt the well-reasoned opinion of the District Court with regard to the suppression of evidence in this case, as all three challenged searches were reasonable under the Fourth Amendment because they were supported by probable cause. The corroboration of the anonymous tips and the experienced officer's reasonable belief that 7545 Battersby Street contained contraband

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

5

gave rise to probable cause sufficient to support issuance of the search warrant for that residence. *See Illinois v. Gates*, 462 U.S. 213, 238-39 (1983) (holding that a "fair probability that contraband or evidence of a crime will be found in a particular place" will justify a search and that confirmation of anonymous tips may give rise to probable cause). The corroboration of the proven reliable DEA informant's statements and the experienced agent's reasonable belief that the house at 7209 Kindred Street contained contraband likewise gave rise to probable cause sufficient to support issuance of the search warrant for that residence. *See United States v. Whitner*, 219 F.3d 289, 297 (3d Cir. 2000) ("[A] number of … courts of appeals have held that evidence of involvement in the drug trade is likely to be found where the dealers reside."); *United States v. Singleton*, 439 F.2d 381, 384 (3d Cir. 1971) (probable cause may be established by verifying the tip of a previously reliable informant). As for the automobile search, since the local officers who arrested Burton had probable cause to believe that contraband would be found in the Oldsmobile, the warrantless search of that car was permissible. *See Arizona v. Gant*, 129 S.Ct. 1710, 1721 (2009) ("If there is probable cause to believe a vehicle contains evidence of criminal activity … a search of any area of the vehicle in which the evidence might be found [is authorized]." (citing *United States v. Ross*, 456 U.S. 798, 820-21 (1982))).

B. *Joinder*

We review the joinder of offenses *de novo*. *United States v. Irizarry*, 341 F.3d 273, 287 (3d Cir. 2003). The counts against Burton were properly joined. Rule 8 of the Federal Rules of Criminal Procedure governs joinder of offenses and defendants in a

6

criminal prosecution.  Both parties acknowledge that Rule 8(a) provides the proper standard to analyze joinder of the counts in this case.  That rule provides that a defendant may be charged with two or more offenses if the offenses "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  Burton's acts in 2005 concerned distribution of crack cocaine and so did his acts in 2007.  At a minimum, those acts were of the same or similar character, as required for joinder under Rule 8(a).

Likewise, Rule 14 does not prevent joinder of the offenses against Burton.  Rule 14 requires a defendant to show that the prejudice from joinder was "clear and substantial." *See United States v. McGlory*, 968 F.2d 309, 340 (3d Cir. 1992).  Burton has not shown, and the record does not support a conclusion of, any such prejudice in this case.  Evidence of Burton's activities in 2005 likely would have been admissible under Federal Rule of Evidence 404(b) to prove intent, knowledge, and absence of mistake for his drug activities in 2007, and vice versa.  *See United States v. Boone*, 279 F.3d 163, 187 (3d Cir. 2002).  Moreover, a jury instruction was given directing the jury to consider each count and offense separately.[2]  Because the evidence of one set of crimes was likely admissible in a prosecution for the other and the jury was instructed to consider each count separately, we conclude that Burton was not substantially prejudiced by the joinder of offenses against him.

---

[2] It is an "almost invariable assumption of the law that jurors follow their instructions." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (citing *Francis v. Franklin*, 471 U.S. 307, 325 (1985)).

7

C.     *Admission of Expert Testimony*

We review a District Court's decision on the admissibility of expert testimony for abuse of discretion.[3] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). "The Rules of Evidence embody a strong preference for admitting any evidence that may assist the trier of fact." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008). Therefore, "[w]e will not interfere with the district court's decision unless there is a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Id.* (internal citation and quotation marks omitted). Burton argues that the District Court erred under FRE 702, FRE 704(b), and FRE 403 by permitting Detective Callaghan to testify at his trial as a narcotics expert, and further erred under Federal Rule of Criminal Procedure 16 because there was inadequate notice regarding the government's intent to call Callaghan as a witness. We see no reason to disturb the District Court's finding that Detective Callaghan's testimony was admissible.

i.     *FRE 702*

"Rule 702 has three major requirements:  (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge [, i.e., reliability]; and (3) the expert's testimony must assist the trier of fact [, i.e., fit]." *United States v. Schiff*, 602 F.3d 152,

---

[3] "An abuse of discretion arises when the District Court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Pineda*, 520 F.3d at 243 (internal citation and quotation marks omitted).

8

172 (3d Cir. 2010) (quoting *Pineda*, 520 F.3d at 244) (internal quotations omitted). "It is well established that experts may describe, in general and factual terms, the common practices of drug dealers." *United States v. Watson*, 260 F.3d 301, 309 (3d Cir. 2001). Furthermore, "the operations of narcotics dealers have repeatedly been found to be a suitable topic for expert testimony because they are not within the common knowledge of the average juror." *Id.* at 307 (citing *United States v. Theodoropoulos*, 866 F.2d 587, 590-92. (3d Cir. 1989)). In this case, Callaghan's twenty years of experience as a narcotics officer qualified him to testify as an expert on narcotics, his testimony was reliably based on that experience, and his testimony assisted the jury to understand aspects of the drug trade outside the purview of a lay juror. *See Kumho Tire*, 526 U.S. at 141-42, 147-49 (1999). The District Court did not abuse its discretion in concluding that Callaghan's testimony met the requirements of Rule 702.

ii.     *FRE 704(b)*

Nor did the Court err in deciding that Detective Callaghan's testimony was consistent with Rule 704(b). Under FRE 704(b), no expert witness "testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto." Fed. R. Evid. 704(b). Callaghan's testimony did not cross that line. Instead, Callaghan described the relevance of the drug evidence admitted in the case. Callaghan's testimony simply supported the inference that the evidence admitted in the case was indicative of someone

9

who distributed crack cocaine. *See Watson*, 260 F.3d at 307-8. Hence, the testimony did not violate Rule 704(b). *See United States v. Davis*, 397 F.3d 173, 179 (3d Cir. 2005).

### iii. *FRE 403*

Callaghan's testimony also did not violate Rule 403, because the probative value of the testimony was not substantially outweighed by the danger of unfair prejudice. "A district court's ruling under Rule 403 may be reversed only if it is arbitrary or irrational." *United States v. Lee*, 612 F.3d 170, 185 (3d Cir. 2010) (internal quotation marks and citation omitted). As already noted, Detective Callaghan's testimony was helpful to explain the meaning and relevance of the drug evidence in the case against Burton. The testimony elicited the "inferential step" that certain items, some seemingly innocuous, were typically used by a person who distributed drugs. *Id.* The testimony may have been prejudicial to him, of course, but only in the permissible way that any evidence indicative of guilt is to any defendant. It certainly was not unfairly prejudicial. *See id.* The District Court's decision that the testimony would be admissible under Rule 403 was not arbitrary or irrational.

### iv. *Adequate Notice*

The District Court did not abuse its discretion by permitting Detective Callaghan to testify when Burton received notice two weeks before trial that the government intended to call Callaghan as a witness. Federal Rule of Criminal Procedure 16 requires the government to give the defendant a "written summary" of any expert testimony, at the

defendant's request.[4] The government complied with the requirements of the rule by sending an appropriate "written summary" to Burton's counsel. Burton's argument that he was prejudiced by the timing of the government's written disclosure is unavailing on this record. He was aware for months before trial of the government's intention to call an expert on narcotics and of the subject of that expert's testimony. There was no bad faith or inordinate delay that we can discern from the government's interaction with Burton. The government's formal written notice under Rule 16 was sent in early January, 2009, promptly after it learned that an expert would indeed be needed for a trial. On these facts, we cannot conclude that the District Court abused its discretion by admitting the expert testimony of Detective Callaghan.

## III.    Conclusion

For the foregoing reasons, we will affirm the judgment of conviction.

---

[4] The required disclosure under Rule 16 is not an automatic obligation on the government; it arises only upon request of a defendant. Fed. R. Crim. P. 16(a)(1)(G) ("At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial.").