**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3162
_____

UNITED STATES OF AMERICA

v.

RICHARD CARABALLO-RODRIGUEZ,

                                                        Appellant

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2:08-cr-00328-002)
District Judge:  Honorable Cynthia M. Rufe

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 9, 2015

Before:  CHAGARES, SHWARTZ and RENDELL, <u>Circuit Judges</u>.

(Filed: December 2, 2015)
_____

OPINION[*]
_____

CHAGARES, <u>Circuit</u> <u>Judge</u>.

     Richard Caraballo-Rodriguez was convicted of one count of conspiracy to

distribute and possess with the intent to distribute more than five kilograms of cocaine, in

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

violation of 21 U.S.C. § 846, and one count of possession of more than five kilograms of cocaine with intent to distribute, and aiding and abetting possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 18 U.S.C. § 2. This case presents the question of whether the District Court plainly erred in admitting portions of the expert testimony of a narcotics agent under Federal Rule of Evidence 704(b). We hold that the District Court did not plainly err in admitting the expert testimony, and we will affirm the judgment of the District Court.

I.

We write solely for the parties and therefore recite only the facts necessary to our disposition. We have previously summarized the factual background of this matter in United States v. Caraballo-Rodriguez, 726 F.3d 418 (3d Cir. 2013) (en banc), and we assume familiarity with that decision.

Briefly, Caraballo-Rodriguez was arrested after he picked up two suitcases containing cocaine at the Philadelphia airport. Prior to his arrival at the Philadelphia airport, Drug Enforcement Administration ("DEA") agents were alerted that he and co-defendant Luis Deya-Diaz would arrive on a flight from Puerto Rico, having paid for their last-minute one-way tickets in cash and having no checked or carry-on luggage. At the airport, DEA agents observed the two men meet a third man at the baggage carousel. Together, the three men collected multiple suitcases from the carousel, brought them to a car parked in the garage, and then entered a separate car parked nearby. The DEA agents alerted state police to stop both vehicles. After receiving consent to search one of the

vehicles, the state police discovered the suitcases, which contained several bricks of cocaine.

At Caraballo-Rodriguez's trial, the Government called Alan Basewitz, a narcotics agent, to testify as an expert regarding the typical characteristics of drug couriers. Basewitz testified:

> [Couriers] are trusted individuals. The couriers, if you're transporting a significant amount, their addresses or families and information are known to the person who is either coordinating or supplying. The inverse is not true, in most instances. And they have to be trusted because of the amounts that they ferry back and forth, both if it's cash, depending on which direction you're heading, or if it's drugs.

> . . . Sometimes [couriers] are not told the exact type of drug. Quite often during my proffers and interviews and intelligence information through conversations with informants and cooperators and other law enforcement and most through my personal interactions with these individuals, they know it's drugs. They may not know the type, depending on the group. They may not know the weight. But, they know or should have known that it's drugs.

> There is an exception to that, when there is what's known as the blind mule. But, the blind mule only occurs, in my expertise and experience, in situations that's dissimilar from those that are present today.

Supplemental Appendix ("Supp. App.") 622-23.

In addition to Basewitz, the Government called Deya-Diaz as a witness, who testified that although he did not initially know the contents of the suitcases, once he picked them up, he "guess[ed]" they contained drugs based on their weight. Supp. App. 428-29. Deya-Diaz added, "[c]ommon sense, drugs. Who else would take five thousand dollars to pick up a suitcase full of clothes?" Supp. App. 435. The Government also introduced phone records indicating that both Deya-Diaz and Caraballo-Rodriguez had

3

been in significant contact with the same phone number in the days preceding their flight to Philadelphia.

After his conviction, Caraballo-Rodriguez filed a post-trial motion for acquittal. The District Court granted the motion, holding that the Government's evidence was insufficient to support an inference that Caraballo-Rodriguez knew the suitcases contained drugs as opposed to other contraband. The Government appealed the District Court's decision. In an en banc decision, we vacated the District Court's order and held that the Government's evidence — which included "Caraballo-Rodriguez's travel plans, Deya-Diaz's testimony, the phone records [of Deya-Diaz and Caraballo-Rodriguez], Agent Basewitz's expert testimony, and the jury's own common sense" — was sufficient to support the conviction. Caraballo-Rodriguez, 726 F.3d at 434.

After remand, the District Court sentenced Caraballo-Rodriguez to the statutory minimum term of imprisonment. Caraballo-Rodriguez timely appealed. On appeal, Caraballo-Rodriguez challenges the admission of the Government's expert testimony.

II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

As Caraballo-Rodriguez did not object to the expert testimony at trial, we review the admission of the expert testimony for plain error. To establish plain error, Caraballo-Rodriguez must show that (1) the District Court erred; (2) the error was clear or obvious, rather than subject to reasonable dispute; and (3) the error affected the appellant's substantial rights, which in the ordinary course means affected the outcome of the

4

proceedings. United States v. Marcus, 560 U.S. 258, 262 (2010); United States v. Tai, 750 F.3d 309, 313-14 (3d Cir. 2014). If all three elements are established, the Court may exercise its discretion to award relief. See United States v. Olano, 507 U.S. 725, 736 (1993). That discretion should be exercised only in cases where the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. (quotation marks omitted); see also United States v. Stinson, 734 F.3d 180, 184 (3d Cir. 2013).

III.

Caraballo-Rodriguez argues that Basewitz's testimony is inadmissible under Federal Rule of Evidence 704(b). Under Rule 704, an expert witness in a criminal case "must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Fed. R. Evid. 704(b). However, "[e]xpert testimony is admissible if it merely supports an inference or conclusion that the defendant did or did not have the requisite mens rea, so long as the expert does not draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion does not necessarily follow from the testimony." United States v. Watson, 260 F.3d 301, 309 (3d Cir. 2001) (quotation marks and alteration omitted).

Caraballo-Rodriguez challenges Basewitz's testimony because "'if the jury found that Caraballo-Rodriguez shared the typical attributes of couriers, the direct inference from Basewitz's testimony would be that he, like all couriers, knew or should have known that his suitcase contained drugs.'" Caraballo-Rodriguez Br. 16-17 (quoting the

5

District Court's post-trial acquittal order in United States v. Cordero, 815 F. Supp. 2d 821, 845 (E.D. Pa. 2011)). In support of this argument, Caraballo-Rodriguez points to Watson, 260 F.3d 301. In Watson, we held that under Rule 704, experts can testify "concerning the modus operandi of individuals involved in drug trafficking" or "the common practices of drug dealers." Id. at 308-09. We noted, however, that "Rule 704(b) may be violated when the prosecutor's question is plainly designed to elicit the expert's testimony about the mental state of the defendant or when the expert triggers the application of Rule 704(b) by directly referring to the defendant's intent, mental state, or mens rea." Id. at 309 (citation omitted). Such a violation may occur if the prosecution makes "repeated invocation of the word 'intent'" in questioning the expert. Id. But we have also found no such violation when a prosecutor's questions were "hypothetical, rather than specific, questions regarding the intent of individual defendants on trial," and when "no evidence was presented that [the expert] had any direct relationship with the investigation or the defendants and, therefore, there was no potential for the jury to conclude that [the expert] had any special insight into the thoughts or intent of the defendants." United States v. Davis, 397 F.3d 173, 179 (3d Cir. 2005) (holding that the district court did not abuse its discretion in allowing expert testimony suggesting that the facts of the case were "consistent" with an "intent to distribute").

The District Court did not commit an error when it admitted Basewitz's testimony that in his experience through proffers and interviews, couriers often "know or should have known that it's drugs." Supp. App. 623. As in Davis, the prosecutor's questions were not plainly designed to elicit testimony about the mental state of the defendant. The

prosecutor asked Basewitz: "Now, with regard to the couriers, how are they recruited?" Supp. App. 621. In asking this question, the prosecutor did not reference Caraballo-Rodriguez; nor did the prosecutor use words or phrases (such as "intent" or "knowledge") that could be reasonably interpreted as seeking to elicit testimony regarding Caraballo-Rodriguez's mental state. Similarly, Basewitz did not refer to Caraballo-Rodriguez in his testimony. Instead, he spoke in general terms about his personal interactions with drug couriers other than Caraballo-Rodriguez. He also testified that he was not, in any way, involved in this particular investigation and trial. Basewitz framed his testimony in such a way that supported an inference that Caraballo-Rodriguez had the requisite knowledge about the contents of the suitcases, but that "ultimate inference or conclusion does not necessarily follow from [his] testimony." Watson, 260 F.3d at 309 (quotation marks omitted). Thus, the District Court did not commit plain error because admission of Basewitz's testimony was proper.[1]

## IV.

For the foregoing reasons, we will affirm the District Court's judgment of conviction and sentence.

---

[1] Even if there were a clear or obvious error, Caraballo-Rodriguez has not satisfied the third prong of the plain error standard — that any such error affected the outcome of the proceedings. As we noted in our en banc decision, the Government's evidence included more than just Basewitz's testimony; other evidence supporting the conviction included Caraballo-Rodriguez's travel plans, Deya-Diaz's testimony, similar phone records of Caraballo-Rodriguez and Deya-Diaz, and the jury's own common sense. See Caraballo-Rodriguez, 726 F.3d at 434.

7