

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-15-2006

# USA v. Pryor

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1468

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Pryor" (2006). *2006 Decisions*. Paper 455.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/455

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

Nos. 05-1468 and 05-3337

———

UNITED STATES OF AMERICA

v.

NAIM PRYOR,
Appellant in No. 05-1468

and

STACEY CRITTENTON,
Appellant in No. 05-3337

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. Crim. Nos. 03-cr-00349-1 and 03-cr-00349-2)
District Judge: Hon. Harvey Bartle, III, Chief Judge

———

Submitted Under Third Circuit LAR 34.1(a)
September 14, 2006

Before: SLOVITER, WEIS and GARTH, Circuit Judges

(Filed: September 15, 2006)

———

OPINION

SLOVITER, Circuit Judge.

## I.

In November 2002, Philadelphia Police Officer William Golphin saw Appellant Naim Pryor park a white Acura coupe near the Blue Nile Bar in west Philadelphia. Golphin watched Pryor exit the Acura, enter the bar, return to the Acura accompanied by two men, and retrieve a plastic baggie from the driver's side door. From inside the unmarked van where he was conducting surveillance, Golphin saw Pryor remove several small bundles and give them to one of the men in exchange for cash.

Shortly thereafter, Golphin witnessed Pryor lift his shirt, pull a black handgun from his waistline, and put the gun in the trunk. Golphin then saw Pryor retrieve from the trunk a plastic baggie containing objects Golphin believed to be cocaine base ("crack"), enter the car, and begin to drive away. Some minutes later, Philadelphia police officers stopped the Acura. As Philadelphia Police Officer Victor DaVilla and Sergeant Paul Brown approached the Acura, DaVilla saw a person in the front passenger seat of the vehicle, later determined to be Appellant Stacey Crittenton, shove an object later determined to be a baggie filled with crack into a passenger-side door compartment.

Police drove Appellants to the police station, impounded the Acura, and searched Appellants. They recovered several hundred dollars in cash from each. Officers also recovered from Crittenton, inter alia: (1) a plastic baggie with the image of a red apple on it containing seven heat-sealed packets later determined to contain heroin, (2) a piece of paper with the word "smacc" on it, (3) a pager, and (4) six red-tinted ziploc packets later

2

determined to contain crack. Police recovered packets of crack and heroin from the Acura's center console. Police recovered from the trunk: (1) a shopping bag containing a handgun (loaded with one live round in the chamber and seven live rounds in the magazine), (2) a cardboard box containing equipment commonly used in the sale of drugs, (3) baggies containing heroin and quinine, (4) ziploc baggies, (5) twenty-eight glass jars later determined to contain marijuana, and (6) a gas and an electric bill each in the name of Naim Pryor. Five-and-a-half months later, in May 2003, ATF Special Agent Vitzthum searched the Acura again and found a red-apple baggie and a slip of paper with "smacc" and the pager number associated with the pager that had been found on Crittenton's person.

In May 2003, a grand jury charged Pryor and Crittenton with conspiracy to distribute cocaine, crack, heroin, and marijuana in violation of 21 U.S.C. § 846 (count one), and with possession with intent to distribute those same drugs and aiding and abetting such possession in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c) (counts two to five). The indictment also charged Pryor with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g) (count six) and charged that Pryor "knowingly used, and carried a firearm . . . during and in relation to a drug-trafficking crime" in violation of 18 U.S.C. § 924(c)(1) (count seven). App. at 706. Pryor and Crittenton proceeded to jury trial.

In June 2004, the jury found both Pryor and Crittenton guilty on counts one through five. The jury found Pryor guilty on count six. Whether the jury found Pryor

3

guilty on count seven is a matter of dispute in the present case.

Crittenton was sentenced in December 2004, one month before the decision in United States v. Booker, 543 U.S. 220 (2005). He appealed his sentence to this court, but we remanded this appeal to the District Court for resentencing in light of Booker. In July 2005, Crittenton was resentenced to 180 months' imprisonment, three years' supervised release, and a $500 special assessment. He timely filed this appeal.

Pryor was sentenced in January 2005, shortly after Booker was decided, to 120 months' concurrent imprisonment on counts one to six, five years' consecutive imprisonment on count seven, six years' supervised release, and a $400 special assessment. He timely filed this appeal.

## II.

We exercise plenary review of the Government's argument that Crittenton waived his right to the present appeal. See Gibbs v. Cross, 160 F.3d 962, 964 (3d Cir. 1998). Following the Supreme Court's landmark decision in Booker, this court sent notices to appellants in all pending cases requesting response as to whether they wished to challenge both their convictions and sentences or only their sentences. However, no such notice was sent to Crittenton. Instead, Crittenton filed an unopposed motion for summary action and remand for resentencing under Booker before any notice could be issued. In that motion, Crittenton made no comment as to whether or not he intended to challenge his conviction. On May 10, 2005, we entered an order stating:

> Appellant's unopposed motion for summary remand is

granted. Appellant challenges [his] sentence but not [his] conviction under *United States v. Booker*, 125 S. Ct. 738 (2005), and we have determined that the sentencing issues Appellant raises are best determined by the District Court in the first instance. Accordingly, we vacate the sentence and remand for resentencing in accordance with *Booker*.

United States v. Crittenton, No. 04-4717 (3d Cir. May 10, 2005).

The Government relies on United States v. Pultrone, 241 F.3d 306 (3d Cir. 2001), to support its argument that Crittenton's failure to present objections to his conviction at the time he filed his motion for summary remand constituted a waiver of any challenge to his conviction. However, unlike Crittenton, Pultrone voluntarily moved to dismiss his own appeal and the case proceeded in this court to full briefing and resolution on the merits of the government's cross-appeal. United States v. Pultrone, No. 97-1271 (3d Cir. Aug. 19, 1997) (order granting appellant's request to withdraw appeal); United States v. Pultrone, No. 97-1327 (3d Cir. Mar. 9, 1998) (unpublished opinion vacating sentence and remanding); see Pultrone, 241 F.3d at 308 ("[B]ecause Pultrone abandoned his appeal, no other aspect of his conviction or sentence was at issue."). In the present case, Crittenton did not withdraw his appeal, and we did not review the merits of an appeal by either party. United States v. Crittenton, No. 04-4717 (3d Cir. May 10, 2005).

After Crittenton's motion for summary remand, this court routinely instructed parties that a motion seeking summary remand for resentencing under Booker must state that only the sentence and not the conviction was being challenged. Crittenton did not have the benefit of such notice. Given the confusion surrounding Booker and the fact that

5

this court had no procedure in place for post-Booker review at the time Crittenton filed his motion, we conclude that Crittenton did not waive the present challenge to his conviction.

**III.**

Appellants make three major arguments on appeal. First, Pryor argues that the District Court violated his Fifth Amendment right to be tried only on the grand jury's charges when the Court instructed the trial jury on a different offense under 18 U.S.C. § 924(c) than that contained in count seven of the indictment. A constructive amendment occurs where a defendant is deprived of his or her "substantial right to be tried only on charges presented in an indictment returned by a grand jury." United States v. Syme, 276 F.3d 131, 149 (3d Cir. 2002) (citation omitted). Such a "constructive amendment to the indictment constitutes 'a *per se* violation of the fifth amendment's grand jury clause.'" Id.

The parties agree that we review this constructive amendment issue for plain error.[1] Fed. R. Crim. P. 52(b). Ordinarily, the defendant must establish that: (1) the court erred and (2) the error was "plain" (i.e., obvious) under the law at the time of review, and (3) the error affected his or her substantial rights. See Johnson v. United States, 520 U.S. 461, 467 (1997); United States v. Olano, 507 U.S. 725, 733-35 (1993). However, where the district court erred by constructively amending an indictment, such error is "presumed

---

[1] Present counsel took over for trial counsel at Pryor's sentencing hearing.

6

prejudicial in the plain error context" and the Government bears the burden of proving the absence of the third element (i.e., the Government must show that the constructive amendment did not affect the defendant's substantial rights). United States v. Syme, 276 F.3d 131, 151, 154 (3d Cir. 2002). "An error affects substantial rights when it is prejudicial and affects the outcome of district court proceedings." United States v. King, 454 F.3d 187, 193 (3d Cir. 2006) (citing United States v. Davis, 407 F.3d 162, 164 (3d Cir. 2005)). Where plain error has affected substantial rights, this court, in its discretion, may award relief in favor of the defendant where the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." Olano, 507 U.S. at 736 (citation omitted). We will refer to this discretionary determination as the fourth prong of plain error analysis.

At the time of the alleged offense, § 924(c)(1)(a) provided that:

> [A]ny person who, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall [receive additional punishment].

(emphasis added). This statute therefore provided for two separate offenses: (1) the "use" or "carrying" of a firearm "during and in relation to" a drug-trafficking crime, and (2) the "possession" of a firearm "in furtherance" of a drug-trafficking crime. In the present case, the Government "readily concedes" the first two prongs of plain error analysis, i.e., "that the [D]istrict [C]ourt erred in instructing the jury on the elements of 'possession' and 'in furtherance of,' rather th[a]n the elements of 'use or carry' and 'during and in

7

relation to'" under § 924(c)(1)(a), and that the error was "obvious."[2] Appellee's Br. at 25; accord id. at 24 ("The [D]istrict [C]ourt . . . mistakenly instructed the jury regarding a separate prong of Section 924(c)." ).

Pryor argues that the error conceded by the Government in the present case is "structural." Reply Br. at 6. Where an error is structural, it normally "constitute[s] per se reversible error even under plain error review." Syme, 276 F.3d at 156 n.10; see Arizona v. Fulminante, 499 U.S. 279, 310 (1991). In Syme, this court noted that "it is doubtful that constructive amendments are structural errors" but we failed to decide that question because the Government in that case could not rebut the presumption that the constructive amendment there affected Syme's substantial rights. Id. at 156, 156 n.10.

The Government makes two arguments to rebut the presumption that the District Court's constructive amendment of the grand jury charge affected Pryor's substantial rights. First, the Government argues that the "during and in relation to" element of § 924(c)(1)(a) is always satisfied by a jury finding that the defendant committed the offense "in furtherance" of drug-trafficking (i.e., "in furtherance" is, under any circumstances, a more stringent standard). We have acknowledged that "Congress may well have intended 'in furtherance' to impose a more stringent standard than 'in relation to.'" United States

---

[2] The Government argues that "for these reasons the [D]istrict [C]ourt's erroneous instructions did not constructively amend the indictment." Appellee's Br. at 32. However, it is unclear how the Government can make this claim after conceding that the jury was charged on an offense other than that contained in the indictment.

8

v. Loney, 219 F.3d 281, 287 (3d Cir. 2000); see also United States v. Combs, 369 F.3d 925, 932 (6th Cir. 2004) (noting "in furtherance" standard is a "slightly higher standard" and "encompass[es] the 'during and in relation to' language").  Although we refrain from reaching the question whether the "in furtherance" standard always encompasses the "during and in relation to" language, in the present case there is no circumstance in which the defendants could have acted "in furtherance" of drug distribution without acting "during and in relation to" that distribution.

Second, the Government argues that the "uses or carries" element of § 924(c)(1)(a) is satisfied, under the facts of the present case, by the jury's finding that the defendant "possess[ed]" a gun in furtherance of drug trafficking.  The District Court instructed the jury that possession includes both actual possession (e.g., holding a gun on one's person) and constructive possession (e.g., exerting dominion and control over a gun).  In United States v. Muscarello, 524 U.S. 125 (1998), the Supreme Court held that "carries" includes both actual possession of a firearm on one's person and constructive possession of a firearm in a vehicle, even if the firearm is in the trunk or a locked glove compartment.  Id. at 138-39.  Relying on Muscarello, the Government argues that the jury could not have concluded that Pryor possessed the gun without carrying it because all of the evidence pointed to Pryor's possession of the gun either on his person or in the trunk of the Acura.

We agree with the Government that, given the evidence in the record, a jury finding that Pryor possessed the firearm in furtherance of a drug trafficking crime necessarily subsumed a finding that Pryor carried the firearm during and in relation to that

9

crime. For that reason, if the District Court gave proper instructions to the jury about the possession-in-furtherance prong, there was no violation of Pryor's substantial rights.

Pryor argues in his reply brief, however, that the District Court failed to properly instruct the jury. He contends that the District Court did not make entirely clear that "carrying" a firearm "in relation to" requires "that the carrying be non-accidental and not a coincidence." Reply Br. at 12; see United States v. Williams, 344 F.3d 365, 371-72 (3d Cir. 2003). The District Court instructed, in relevant part:

> To prove that the defendant possessed a firearm in furtherance of a drug trafficking offense the Government must prove that the defendant possessed a firearm that further advanced, promoted or helped forward one or more of the drug trafficking crimes charged . . . .

App. at 664. Pryor argues that therefore the jury was instructed that "'in furtherance' means the firearm had the effect of aiding the offense, whether or not the defendant intended it to do so . . . ." Reply Br. at 13.[3]

As in Johnson, where the district court failed to submit the element of materiality to the jury, the District Court's alleged failure to instruct the jury on the element of intent in the present case may or may not amount to a "structural error." See Johnson, 520 U.S.

---

[3] As Pryor recognizes, the mens rea element to which he refers is present in both the "possesses" and "carries" prongs of § 924(c)(1)(a). See United States v. Sparrow, 371 F.3d 851, 853-54. (Reply Br. at 13 n.5) (mere presence of a firearm insufficient; rather, the evidence must show that, as to the particular defendant, the circumstances and details of his or her possession of the firearm were such that they helped advance the drug trafficking offense).

10

at 469.  However, "we need not decide that question because, even assuming that the failure to submit [intent] to the jury 'affected substantial rights,' it does not meet the final requirement" of plain error analysis.  Id.  We cannot conclude that the forfeited error "'seriously affects the fairness, integrity or public reputation of judicial proceedings'" in this case.  Id. at 470 (quoting Olano, 507 U.S. at 736).

The evidence that the gun's presence in the trunk was non-accidental and not a coincidence was overwhelming.  See id. at 470.  Pryor argues that accidental presence of the gun is possible because the jury could have credited the testimony of his fiancee that she "did not know" if Pryor or her brother had put the gun in the trunk, and therefore the jury could have entertained a reasonable doubt as to whether Pryor had any intent to "carry" the gun "in relation to" the drug distribution offense found by the jury to have occurred – i.e., given the opportunity to use the gun to protect himself from an attempted robbery, he would not have done so.[4]  This argument is far-fetched.  On this record, there is no basis for concluding that the District Court's error "seriously affected the fairness, integrity or public reputation of judicial proceedings."[5]

Appellants' second major argument on appeal is that the prosecutor committed

---

[4]  The jury found that Pryor possessed the gun, so Pryor does not, and indeed cannot, argue that he did not know the gun was in the trunk.

[5]  Crittenton argues that his case should be remanded for resentencing if we hold that the District Court's constructive amendment constituted reversible plain error.  Because we do not so hold, we need not address this argument.

11

reversible misconduct by eliciting testimony from Police Detective Gaul, an expert witness, about the relationship between drug dealing and violence that overstepped the District Court's ruling restricting such testimony, and by making inappropriate statements in summation about this relationship. In response to defense objections about Gaul's testimony, the Court ruled, "Why don't we limit it to the question, in his experience is it common for those who are dealing in drugs to carry weapons? . . . [A]sk him that and ask him the answer is yes or no. Let's . . . leave it at that . . . ." App. at 438-39. Because the Appellants failed to object to the prosecutor's allegedly improper questioning of Gaul after the Court's ruling, we review for plain error. We also review the prosecutor's summation statement for plain error because there was no objection. United States v. Moore, 375 F.3d 259, 263 (3d Cir. 2004).

"In order to demonstrate prosecutorial misconduct under a plain error standard, the review must reveal egregious error or a manifest miscarriage of justice." United States v. Brennan, 326 F.3d 176, 182 (3d Cir. 2003) (quoting United States v. Brown, 254 F.3d 454, 458) (quotation marks omitted). We have carefully reviewed the questioning and summation alleged by Appellants to demonstrate misconduct, and conclude that any misconduct arguably therein falls far short of "egregious error" or "manifest miscarriage of justice," especially in light of the District Court's curative instruction to the jury to "disregard . . . any inference that there's any violence in this matter." App. at 484; see Greer v. Miller, 483 U.S. 756, 766 n.8 (1987).

In their third major argument, Appellants contend that the trial court committed

12

plain error in violation of Federal Rule of Evidence 704(b) when it allowed Police Detective Gaul to opine on the "purpose" for which Appellants possessed the controlled substances in the present case. Appellants argue that this testimony impermissibly presented to the jury expert opinion going to an element of the drug distribution charge – i.e., the defendants' mental state.

Rule 704(b) states,

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

In addition to an expert's actual testimony, this court held in United States v. Watson, 260 F.3d 301 (3d Cir. 2001), that "Rule 704(b) may [also] be violated [by a] prosecutor's question [when it] is plainly designed to elicit the expert's testimony about the mental state of the defendant." Id. at 309 (citations omitted).

Many of the statements alleged by Appellants to be reversible plain error explicitly referred to items in evidence as being "consistent with" drug distribution. Such testimony is not prohibited by Rule 704(b). United States v. Davis, 397 F.3d 173, 179 (3d Cir. 2005). However, two of Gaul's statements did not include the words "consistent with." First, Gaul stated, "In my opinion, the narcotics and all the paraphernalia in reference to this investigation shows that the purpose for these are for distribution to sell," App. at 429. Second, Gaul stated, "[W]hen I form an opinion I take in the factors of the totality

13

of the circumstances and [rubber bands next to drug paraphernalia and drugs are] just one more [of the factors] that form[ my] opinion that the drugs were possessed with the purpose for distribution," App. at 446-47.

Gaul's choice of words does not necessarily suggest that he was opining on Appellants' intent. His statements could equally suggest merely that an array of drugs and paraphernalia such as that found in the present case is consistent with drug distribution. As such, any error in allowing the statement was not "plain," such that the District Court should have noticed the putative Rule 704(b) problem absent defense counsel's objection. Similarly, the prosecutor's questions were not plainly designed to elicit testimony about Appellants' mental state. See Watson, 260 F.3d at 309. Moreover, we conclude that there was no violation of Appellants' substantial rights because the absence of Gaul's statements would not have led to a different trial outcome.

**IV.**

For the reasons set forth above, we will affirm the judgments of conviction.