NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3258
_____

UNITED STATES OF AMERICA

v.

JAMES ROBINSON,

Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 2:09-cr-00473)
District Judge: Honorable Jan E. Dubois
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 20, 2013
_____

Before: JORDAN, VANASKIE, and GREENBERG, *Circuit Judges*.

(Opinion Filed: April 4, 2014)
_____

OPINION
_____

VANASKIE, *Circuit Judge*.

Appellant James Robinson was convicted after a jury trial of possession of 28

grams or more of cocaine base with intent to distribute, in violation of 21 U.S.C. §

841(a)(1) and (b)(1)(B). Robinson now appeals the District Court's denial of (1) his pre-

trial motion to suppress the narcotics recovered from his person by law enforcement, and (2) his post-trial motion to vacate the judgment and grant a new trial under Federal Rule of Criminal Procedure 33. For the reasons discussed below, we will affirm the District Court's denial of Robinson's motions.

I.

Because we write primarily for the parties, we will recount only the facts essential to our discussion.

On the early afternoon of February 22, 2009, Officer James Robertson of the Philadelphia Police Department was alone in a marked patrol vehicle in a high-crime area of North Philadelphia. At approximately 1:45 p.m., Robertson received a radio call regarding an anonymous report of a light-complexioned black male, wearing a tan shirt and blue pants, committing an assault on a pregnant woman near the intersection of 27th Street and Cecil B. Moore Avenue. Robertson, who was only four blocks away, arrived at the scene within roughly 30 seconds of the radio call. As he approached the intersection, he observed Robinson standing at the southwest corner of the intersection. Robinson's clothing and physical features matched the description of the alleged assailant. The only other person Robertson saw nearby was a black male wearing a black bubble jacket and black pants.

Officer Robertson exited his patrol car, approached Robinson, and identified himself as a police officer. He immediately observed that Robinson, who was not wearing a jacket, was underdressed for the "very cold" winter weather, and appeared to

2

be "sweaty" and "kind of shaking." (App. 56–57.) Officer Robertson asked "what was going on," to which Robinson responded that "nothing was going on." (App. 57.) When Robertson asked for Robinson's name, Robinson responded that the officer "didn't need to know his name," (*id.*), and was unable to produce identification. Throughout this conversation Robinson kept his hands inside his pockets.

Officer Robertson then asked Robinson to walk with him toward the wall of a nearby building, remove his hands from his pockets, and place them against the wall so that Robertson could do a frisk for weapons. Robinson hesitated before complying. Officer Robertson then noticed "a large bulge" in Robinson's left front pocket. (App. 63.) When he patted the bulge with his hand, he felt "a hard, rocky substance" and could hear the sound of plastic moving around. (App. 64.) When he asked Robinson what the object was, Robinson responded that he didn't know. Officer Robertson then searched Robinson's pocket and discovered 66 plastic baggies containing what proved to be upwards of 55 grams of crack cocaine. At that point he placed Robinson under arrest, and shortly thereafter recovered $630 in cash from Robinson's right pocket.

On July 15, 2009, Robinson was indicted by a federal grand jury for possession of 50 grams or more of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(l)(B). Robinson moved to suppress the narcotics, arguing that Officer Robertson lacked reasonable suspicion to conduct a *Terry* stop. On October 8, 2010, the District Court held an evidentiary hearing, after which it denied Robinson's motion to suppress in a detailed written opinion dated October 22, 2010.

3

In March 2012, after a string of pre-trial continuances, the District Court reopened the evidentiary hearing to consider testimony given by Officer Robertson at Robinson's state-court preliminary hearing. The District Court again denied the motion to suppress in an order dated March 22, 2012. Also in March 2012, based on changes to the Sentencing Guidelines made by the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010), the Government obtained a superseding indictment charging Robinson with possession of 28 grams or more of cocaine base with intent to distribute, again in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).

Robinson proceeded to trial in April 2012. Prior to deliberations, Robinson requested that the jury be charged on the lesser-included offense of simple possession of a controlled substance, of which intent to distribute is not an element. On April 26, 2012, the jury returned a verdict of guilty on the charge of possession of a controlled substance with intent to distribute, and also found that the offense involved more than 50 grams of crack cocaine.

After the verdict, Robinson filed a motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. He claimed that the verdict was against the weight of the evidence with respect to the element of intent. He also argued that a government witness, Special Agent Randy Updegraff, had improperly opined as to Robinson's mental state with respect to the element of intent to distribute. The District Court denied the motion on both counts in a written opinion and order dated May 14, 2012.

On August 9, 2012, the District Court imposed a below-Guideline sentence of 120 months' imprisonment and 8 years of supervised release. Judgment was entered the following day. Robinson filed a timely notice of appeal.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's legal determination that law enforcement had reasonable suspicion to stop and frisk Robinson, but review underlying factual findings only for clear error. *Ornelas v. United States*, 517 U.S. 690, 699 (1996). We review the denial of a motion for a new trial for abuse of discretion. *See United States v. Brennan*, 326 F.3d 176, 189 (3d Cir. 2003) (citing *United States v. Jasin*, 280 F.3d 355, 360 (3d Cir. 2002)).

## III.

In the absence of a warrant, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). During an investigatory stop, an officer may conduct an over-the-clothes frisk for weapons if the officer has reasonable suspicion to believe that the suspect may be armed. *Terry*, 392 U.S. at 27.

The "reasonable suspicion" standard requires that law enforcement have "at least a minimal level of objective justification for making the stop." *Wardlow*, 528 U.S. at 123. We base our review on the totality of the circumstances. *See United States v. Cortez*, 449

5

U.S. 411, 417 (1981); *United States v. Brown*, 448 F.3d 239, 246–47 (3d Cir. 2006).

Non-predictive anonymous tips, taken alone, are generally of insufficient probative value to warrant an investigatory stop. *See Florida v. J.L.*, 529 U.S. 266, 271 (2000); *United States v. Roberson*, 90 F.3d 75, 78–80 (3d Cir. 1996). But where the responding officer corroborates the tip, such as by observing a suspect whose clothing matches the description provided, and thereafter notices "unusual or suspicious conduct on [the suspect's] part[,]" an investigatory stop may be justified. *Roberson*, 90 F.3d at 80; *see also Wardlow*, 528 U.S. at 124 (noting that "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion"). We have also recognized the significance of tips concerning ongoing crimes of violence, *see United States v. Nelson*, 284 F.3d 472, 480 (3d Cir. 2002), and the relevance of a suspect's presence in a high-crime area, *see Brown*, 448 F.3d at 251. The possibility that a suspect's actions may be "capable of innocent explanation" does not, in itself, rule out a reasonable suspicion of criminal activity. *United States v. Valentine*, 232 F.3d 350, 356 (3d Cir. 2000).

Here, the District Court concluded that Officer Robertson had reasonable suspicion to detain Robinson based on the totality of the circumstances. Further, based on the subject of the tip, as well as Robinson's apparent nervousness and reluctance to remove his hands from his pockets, the District Court concluded that Robertson had

reason to believe that Robinson might be armed.[1]

We agree with the District Court's thorough assessment of the record. Before the stop at issue occurred,[2] Officer Robertson was presented with several pertinent facts. First, he was aware that an anonymous tipster had reported an assault in progress just moments earlier. Second, the tip had described a particular suspect at a specific location, to wit, a light-complexioned black male wearing a tan shirt and blue pants at the intersection of 27th Street and Cecil B. Moore Avenue. This corresponded precisely to Robinson's appearance and location. Third, Robertson was aware from his patrol duties that the setting was a high-crime area. Fourth, and most importantly, the officer's suspicions were raised by Robinson's clothing, which was inappropriate for the February weather, and his demeanor, which included sweating and shaking. These observations were consistent with the possibility that Robinson had just been involved in a physical altercation of some kind.

In sum, we conclude that Officer Robertson's decision to detain Robinson for further investigation was warranted. While each factor "alone is susceptible to innocent

---

[1] Robinson does not contest the District Court's conclusion that Officer Robertson was justified in entering Robinson's pocket after discovering a suspicious bulge during his frisk.

[2] A threshold question we must consider is when the seizure occurred. We have previously recognized that "[a] seizure occurs when there is either (a) a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful, or (b) submission to a show of authority." *Brown*, 448 F.3d at 245 (citations and quotation marks omitted). Like the District Court, we assume without deciding that Officer Robertson detained Robinson at or very shortly after the start of their conversation.

explanation, and some factors are more probative than others, taken together, they suffice[] to form a particularized and objective basis for [the stop]." *United States v. Arvizu*, 534 U.S. 266, 267 (2002).

Officer Robertson's belief that Robinson may have been armed was likewise objectively reasonable. Because Robertson was investigating a report of a particularly heinous assault, he was rightly concerned that a possible perpetrator might be carrying a weapon. Beyond that, Robinson's demeanor before and during questioning, combined with the fact that he did not display his hands throughout the initial conversation and hesitated before removing them upon request, provided Officer Robertson with further reason to believe that Robinson may have been concealing a weapon. Accordingly, the protective frisk which led to the seizure at issue was justified under the circumstances, and the District Court was correct in denying the motion to suppress.

IV.

Rule 33 of the Federal Rules of Criminal Procedure provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A district court may grant such a motion only if the court "believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *Brennan*, 326 F.3d at 189 (quoting *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002) (internal quotation marks omitted)). In reviewing the evidence, the district court must "exercise[] its own judgment in assessing the Government's case." *Id.* (quoting *Johnson*, 302 F.3d at

150).  Relief under this standard should be granted "sparingly and only in exceptional cases."  *Id.* (quoting *Gov't of the V.I. v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987)).

A.

Robinson's first argument for relief under Rule 33 is that the jury's verdict was against the weight of the evidence with respect to the element of "intent to distribute," and thus constituted a miscarriage of justice.  Specifically, Robinson contends that "[t]he jury gave excessive weight" to the purportedly biased testimony of DEA Agent Updegraff, who had "never . . . participated in a federal prosecution for simple possession of narcotics" and "never considered whether [Robinson] merely possessed the crack cocaine for personal use rather than for sale."  Appellant's Br. at 22.  He also argues that Officer Robertson's testimony "should have been more highly scrutinized" due to his relative inexperience as a patrol officer.  *Id.*

The District Court correctly held that these arguments are not sufficient to warrant relief under Rule 33.  There is nothing to indicate that the jury unduly credited the testimony of Agent Updegraff, whose qualifications as an expert were well established and whose conclusions were not significantly undermined in any way.  Nor is there reason to believe that Updegraff "never considered" the possibility that Robinson was a user rather than a seller of narcotics—to the contrary, his testimony showed that he had many reasons for his assessment in that regard.  We also agree with the District Court that the jury was entitled to rely on Officer Robertson's testimony despite his relative dearth of experience on patrol.  Consequently, because Robinson has failed to show a

9

miscarriage of justice, the District Court did not abuse its discretion in denying

Robinson's motion for relief on this basis.

B.

A defendant may also be entitled to a new trial where evidentiary errors were so

pervasive as to constitute "a substantial influence on the outcome of trial." *United States*

*v. Thornton*, 1 F.3d 149, 156 (3d Cir. 1993) (quoting *United States v. Hill*, 976 F.2d 132,

145 (3d Cir. 1992)(internal quotation marks omitted)). Here, Robinson alleges only a

single evidentiary error: he contends that a short portion of Agent Updegraff's testimony

violated Federal Rule of Evidence 704(b), which provides:

> In a criminal case, an expert witness must not state an opinion
> about whether the defendant did or did not have a mental state
> or condition that constitutes an element of the crime charged
> or of a defense. Those matters are for the trier of fact alone.

Fed. R. Evid. 704(b).[3]

Rule 704(b) is often implicated under precisely these circumstances, *i.e.*, where

the Government seeks to introduce expert testimony characterizing certain factors as

consistent with an intent to sell narcotics rather than use them. *See, e.g.*, *United States v.*

*Davis*, 397 F.3d 173, 177–79 (3d Cir. 2005). To the extent that such testimony "merely

support[s] an inference or conclusion" regarding the defendant's mental state, it is

---

[3] The Government urges that we should apply plain error review to this claim because Robinson failed to object under Rule 704(b) at the time of Updegraff's testimony. *See United States v. Saada*, 212 F.3d 210, 224 (3d Cir. 2000). Because we find that Robinson is not entitled to relief under Rule 33, we need not consider whether the Government is correct that a stricter standard should apply.

generally admissible. *United States v. Watson*, 260 F.3d 301, 308–09 (3d Cir. 2001) (quotation marks and citations omitted). We have recognized violations of the rule, however, where "the prosecutor's question is plainly designed to elicit the expert's testimony about the mental state of the defendant, or when the expert triggers the application of Rule 704(b) by directly referring to the defendant's intent, mental state, or *mens rea*[.]" *Id.* at 309 (citations omitted).

Here, Agent Updegraff established his credentials by describing his participation in approximately 1000 narcotics investigations, many of which involved cocaine. He then detailed the differences between powder cocaine and crack cocaine, the means by which those products reach market in the United States, and his experiences interviewing both sellers and users of the drug. He also described certain particularities of crack cocaine distribution in the Philadelphia area, including with respect to pricing and packaging.

Next, Updegraff reviewed the Government's narcotics evidence and explained that the quantity and packaging of the crack cocaine at issue were consistent with items that would be carried by a "mid-level dealer," *i.e.*, a dealer who sells at wholesale prices to street-level dealers. (App. 317.) Updegraff opined that 55 grams of cocaine would have a street value of approximately $5500 and a wholesale value of $2000 to $2200, and testified that personal users of narcotics do not stockpile crack cocaine in such large amounts. Similarly, Updegraff stated that the amount and denominations of currency at issue here were consistent with what he would "expect to find on an individual as a mid-

level trafficker[,]" and inconsistent with what a user of crack cocaine would carry. (App. 318–19.)

Robinson takes issue with only the following colloquy, which came near the end of Updegraff's testimony on direct examination:

> Q: Now with regards to all of the evidence that you have in front of you and by that I mean, for the sake of the record, Government's Exhibit No. 2 as well as the chemistry lab report, Government's Exhibit 2A, the property receipt for the drugs, you have that, 2B?
>
> A: I do.
>
> Q: As well as Government's Exhibit No. 3, I'd like to ask you, sir, based on your experience in the area of drug trafficking and distribution in your interviews of various distributors as well as users is that information that you have in front of you more consistent with drug distribution or personal use?
>
> A: In my opinion through my experience this was possessed with intent to distribute.
>
> Q: Now and that is based on the collection of all the information that you have in front of you?
>
> A: Yes, sir.
>
> Q: And the description of the items as well?
>
> A: Yes, sir.

(App. 319–20.)

Assuming without deciding that this portion of Updegraff's testimony constituted an improper comment on Robinson's state of mind, we conclude that any error in permitting the testimony was harmless. In *Watson*, where we found that expert testimony as

to intent had "plainly prejudiced" the defendant, the government was alleging possession of only 2.4 grams of crack cocaine with intent to distribute. 260 F.3d at 310. Here, by contrast, Robinson was apprehended with 55 grams of intricately packaged crack cocaine, $630 in assorted bills, and no paraphernalia to indicate regular drug use. And while the prosecutor in *Watson* explicitly solicited improper state-of-mind testimony from multiple experts, we have before us only a single arguably problematic answer that was in fact unresponsive to the question asked. Updegraff's testimony on the whole was extremely probative and properly within the area of his expertise.

In conclusion, we agree with the District Court that the Government presented "[o]verwhelming circumstantial evidence" upon which a jury could find intent to distribute. (Appellee's Supp. App. 45.) We see no possibility that the testimony at issue had a "substantial influence on the outcome of the trial." *Thornton*, 1 F.3d at 156. The District Court did not abuse its discretion in denying Robinson's motion under Rule 33.

V.

For the aforementioned reasons, we will affirm the District Court's judgment of conviction and sentence dated August 10, 2012, and entered August 13, 2012.