NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 13-3262 & 13-3544
_____

UNITED STATES OF AMERICA
                                    Appellant in No. 13-3544

v.

JOSEPH DEES,
a/k/a Joseph Lee

JOSEPH DEES,
                                    Appellant in No. 13-3262
_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Crim. No. 2-11-cr-00110-001)
District Judge: Honorable Arthur J. Schwab
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 14, 2014
_____

Before: SMITH, VANASKIE, and SHWARTZ, *Circuit Judges*.

(Filed: July 21, 2014)
_____

OPINION
_____

VANASKIE, *Circuit Judge*.

Appellant Joseph Dees was convicted after a jury trial of possession of less than

500 grams of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and

(b)(1)(C).  Dees now appeals his conviction, challenging (1) the sufficiency of the evidence; (2) the admission of testimony from cooperating witnesses regarding Dees's prior bad acts; (3) the admission of expert testimony regarding intent to distribute; and (4) the denial of Dees's motion for a new trial.  The Government appeals from the District Court's finding that Dees did not qualify as a "career offender" under U.S.S.G. § 4B1.1(a).  For the reasons discussed below, we will affirm Dees's conviction, but vacate the District Court's sentence and remand for re-sentencing.

I.

On April 25, 2011, the United States Marshals' Fugitive Task Force established a surveillance position outside the Pittsburgh Motel in Pittsburgh, Pennsylvania with the hope of executing a parole violation warrant for Courtney McFeaters, a known associate of Dees.  The Marshals expected to find McFeaters in a room at the motel with Calvin Smith, whom they believed to be McFeaters's accomplice in a credit card fraud scheme.

While waiting for McFeaters, the Marshals observed the arrival of Dees, for whom they also had an arrest warrant.  Presented with the unexpected opportunity to arrest Dees, the Marshals approached him with their badges displayed, and instructed him to get on the ground.  Dees fled.  After a brief foot chase, Dees was arrested and searched. From Dees's right pants pocket, the Marshals recovered a salad crouton bag containing two smaller plastic bags that, in combination, held 213 grams of cocaine.  In Dees's left pants pocket, the Marshals found $3,550 in banded bundles of $100 and $50 bills.

2

A federal grand jury in the Western District of Pennsylvania indicted Dees on one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Prior to trial, both McFeaters and Smith pleaded guilty to separately charged offenses and agreed to testify against Dees.

At trial, over Dees's objection, the District Court permitted the Government to present expert testimony from Pennsylvania State Trooper Mike Warfield that the cocaine and cash recovered from Dees were consistent with the intent to distribute cocaine, rather than to possess it for personal use. The District Court also permitted the Government to introduce, under Federal Rule of Evidence 404(b), testimony from Smith and McFeaters that Dees routinely stored cocaine in the same salad crouton bag recovered by law enforcement here, and had recently given cocaine to Smith and McFeaters, as well as to prostitutes and other unnamed individuals.

At the close of the Government's case, Dees moved for a judgment of acquittal, arguing that the Government had failed to produce sufficient evidence of intent to distribute. The District Court denied the motion.

Dees opted not to testify and called no witnesses, but did introduce evidence that (1) he had withdrawn $5,000 from a bank account four days before the arrest, and (2) the currency bands bundling the cash at issue were consistent with those typically used by Dees's bank. These facts, according to Dees, supported the inference that the $3,550 recovered from his person was unrelated to drug sales.

Dees's subsequent motion for a judgment of acquittal at the close of evidence was denied. After the two-day trial, the jury convicted Dees of the sole count in the indictment. Dees filed a motion for a new trial, which the District Court denied in a written order dated December 14, 2012.

The Presentence Report ("PSR") initially calculated Dees's adjusted offense level as 22 and his criminal history category as VI, resulting in a Guidelines range of 84 to 105 months' imprisonment. The PSR also found, however, that Dees's prior convictions qualified him as a career offender. This resulted in an offense level of 32 and a Guidelines imprisonment range of 210 to 262 months, which was capped at 240 months due to the 20-year statutory maximum for the offense of conviction. *See* 21 U.S.C. § 841(a)(1) and (b)(1)(C).

Dees objected to his classification as a career offender, arguing that the Government had failed to establish by a preponderance of the evidence that certain potential predicate convictions qualified as crimes of violence. The District Court agreed, and set Dees's Guidelines imprisonment range at 84 to 105 months. The District Court observed, however, that "although not technically a career criminal according to the guideline requirements, [Dees] certainly has led a life exclusively of criminal conduct and is a career criminal at least in the common parlance of the use of that term." (Supp. App. 97.) The Court then imposed a sentence of 105 months' imprisonment, followed by 3 years of supervised release and a special assessment of $100. Dees filed a timely notice

4

of appeal, and the Government cross-appealed.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(b). We exercise plenary review over a defendant's sufficiency-of-the-evidence claims, *see United States v. Miller*, 527 F.3d 54, 60 (3d Cir. 2008), and over the question of whether a particular crime qualifies as a crime of violence, *see United States v. Johnson*, 587 F.3d 203, 207 (3d Cir. 2009). We apply an abuse-of-discretion standard to evidentiary rulings, *see United States v. Davis*, 726 F.3d 434, 440 (3d Cir. 2013), decisions to admit or exclude expert testimony, *see United States v. Watson*, 260 F.3d 301, 306 (3d Cir. 2001), and rulings on motions for a new trial, *see United States v. Brennan*, 326 F.3d 176, 189 (3d Cir. 2003). We review unpreserved evidentiary claims for plain error. *United States v. Polishan*, 336 F.3d 234, 244 (3d Cir. 2003).

## III.

## A.

Dees, as Appellant in Case No. 13-3262, first argues that the evidence against him was insufficient to support the jury's finding that he possessed the cocaine at issue with intent to distribute. A defendant challenging the sufficiency of the evidence on appeal "bears a heavy burden." *United States v. Casper,* 956 F.2d 416, 421 (3d Cir. 1992). Sitting en banc, we have recently described that standard as follows:

5

We "review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt[ ] beyond a reasonable doubt." [*United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005)]. Under this particularly deferential standard, we "must be ever vigilant . . . not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [our] judgment for that of the jury." *Id.* Furthermore, "we review the evidence as a whole, not in isolation, and ask whether it is strong enough for a rational trier of fact to find guilt beyond a reasonable doubt." [*United States v. Boria*, 592 F.3d 476, 480 (3d Cir. 2010)]. We must sustain the jury's verdict "if there is substantial evidence, viewed in the light most favorable to the government, to uphold the jury's decision." *United States v. Gambone*, 314 F.3d 163, 170 (3d Cir. 2003).

*United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (en banc). We also recognized the Supreme Court's admonition that "the verdict must be upheld as long as it does not 'fall below the threshold of bare rationality.'" *Id.* (quoting *Coleman v. Johnson*, 132 S. Ct. 2060, 2065 (2012) (per curiam)).

Here, at trial, Dees advanced the theory that he possessed 213 grams of cocaine for personal use. The jury rejected that theory when it found Dees guilty of possession of cocaine with intent to distribute. Dees asserts, however, that the Government's evidence of intent to distribute was simply insufficient to establish that element of the crime. For instance, Dees describes the testimony of McFeaters and Smith as self-serving, contradictory, and not credible. Likewise, he contends that the expert testimony introduced by the Government on this point was not adequately supported by the

6

underlying facts. Finally, Dees claims that the quantity of the cocaine at issue, taken alone, was insufficient to support the jury's finding that he possessed that cocaine with the intent to distribute it.

All of Dees's assertions concern matters that are within the exclusive province of the jury. It was for the jury to assess the credibility of McFeaters and Smith, and to assign such weight to their testimony as the jury collectively determined such testimony deserved. Likewise, it was up to the jury to assess the opinions proffered by the Government's expert witness. *See In re TMI Litig.*, 193 F.3d 613, 665 (3d Cir. 1999) ("Once admissibility has been determined, then it is for the trier of fact to determine the credibility of the expert witness. . . . The inquiry is a factual one, not a legal one."). And it was for the jury to determine the pertinence of the amount of cocaine found on Dees when he was arrested.

The evidence was sufficient for the jury to believe that Dees had recently given cocaine to McFeaters and Smith, as well as others, drawn from packaging identical to that recovered from his person. Trooper Warfield's testimony, too, established that the cocaine in Dees's possession, which had a wholesale value of $8,400 and a street value of as much as $21,000, was far more consistent with distribution than with personal use. Taken together, there is no question that the Government's evidence provided a sufficient basis for the jury to reject Dees's "personal use" defense and find him guilty of possession with intent to distribute. Accordingly, the District Court was correct to deny

7

Dees's challenge to the sufficiency of the evidence.

B.

Dees's second argument is that the District Court erred by admitting, under Federal Rule of Evidence 404(b), testimony from McFeaters and Smith about Dees's cocaine distribution. Rule 404(b) prohibits the use of what is commonly known as propensity evidence, i.e., prior bad acts admitted "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence, however, may be introduced for other purposes, including "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* 404(b)(2). Other considerations include whether the evidence is relevant under Rule 402; whether its probative value is substantially outweighed by the danger of unfair prejudice under Rule 403; and whether the court delivered an appropriate limiting instruction under Rule 105. *See Huddleston v. United States*, 485 U.S. 681, 691–92 (1988).

Here, the District Court admitted the testimony from McFeaters and Smith because it showed that Dees "had the intent to distribute cocaine." (App. 52.) We have traditionally permitted the use of such evidence under similar circumstances. *See, e.g.*, *United States v. Lee*, 573 F.3d 155, 166 (3d Cir. 2009) (admitting prior drug trafficking conviction to prove intent to distribute); *United States v. Boone*, 279 F.3d 163, 187 (3d Cir. 2002) (admitting prior drug trafficking activity to prove, among other things, intent

8

to distribute).

In this case, Dees's intent was the only issue at trial and the evidence in question bore squarely on that point. The District Court thus did not abuse its discretion in concluding that the evidence was relevant and that its probative value outweighed its prejudicial effect.[1] Consequently, Dees is not entitled to relief on this basis.

C.

Dees contends that the testimony of Trooper Warfield violated Federal Rule of Evidence 704(b), which provides:

> In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.

Fed. R. Evid. 704(b). Rule 704(b) is often implicated under precisely these circumstances, i.e., where the Government seeks to introduce expert testimony characterizing certain factors as consistent with an intent to sell narcotics rather than use them. *See, e.g.*, *United States v. Davis*, 397 F.3d 173, 177–79 (3d Cir. 2005). To the extent that such testimony "merely support[s] an inference or conclusion" regarding intent in general, without explicit reference to the defendant, it is usually admissible.

---

[1] Dees does not argue that the District Court's failure to give a limiting instruction is the basis for, or compounds, any error in this regard, and in any event it appears that Dees failed to request such an instruction despite two invitations from the District Court to do so. (App. 53, 111.)

*United States v. Watson*, 260 F.3d 301, 308–09 (3d Cir. 2001) (quotation marks and citations omitted).  We have recognized violations of the rule, however, where "the prosecutor's question is plainly designed to elicit the expert's testimony about the mental state of the defendant, or when the expert triggers the application of Rule 704(b) by directly referring to the defendant's intent, mental state, or mens rea[.]"  *Id.* at 309 (citations omitted).

Here, Dees filed a motion in limine to preclude Trooper Warfield from testifying as to the ultimate question of Dees's mental state.  The District Court denied the motion based on the Government's representation that Warfield would restrict his testimony to appropriate subjects, but noted that "[s]hould the testimony of Mr. Warfield move afield from the proper scope of testimony, Defense counsel shall properly object and the Court will consider any such objection during trial."  (App. 52.)

Warfield's trial testimony was consistent with the Government's pre-trial proffer.  He explained that 213 grams of cocaine would have a wholesale value of $8,400 and a street value of approximately $21,000.  He further testified that in his experience, drug addicts virtually never stockpile cocaine in such large amounts exclusively for personal use, and that instead such possession is consistent with a person selling cocaine for profit.

Dees now takes issue with two exchanges in Warfield's testimony.  The first came during Warfield's direct examination:

10

Q: Now, in terms of the amount of cocaine here, the 7.55 --
let me say the 213.9 grams

A: Yes, sir.

Q: -- do you have an opinion as to whether that is consistent
with an intent to distribute as opposed to just a personal use?

A: That's consistent with the intent to distribute.

(App. 251.) The second occurred during cross examination:

Q: All right. What you're testifying here is that in your
opinion this amount of cocaine that Mr. Conway proffered to
you is consistent or can be consistent with an intent to
distribute it; correct?

A: Absolutely.

Q: That's your opinion?

A: Yes.

(App. 253–54.)

Contrary to Dees's assertion, the testimony at issue was not objectionable.

Warfield did not opine as to Dees's mental state, but instead phrased his conclusions in

terms of common practices in the drug trade. Accordingly, his testimony "merely

support[ed] an inference or conclusion" regarding the ultimate question, and thus did not

cross the line into prohibited opinions about Dees's mental state. *Watson*, 260 F.3d at

308–09. As such, Dees presents no meritorious argument for relief on this ground.

D.

Dees's final argument is that the District Court erred when it denied his motion for

11

a new trial. Rule 33 of the Federal Rules of Criminal Procedure provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A district court may grant such a motion only if the court "believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *United States v. Brennan*, 326 F.3d 176, 189 (3d Cir. 2003) (quoting *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002) (internal quotation marks omitted)). In reviewing the evidence, the district court must "exercise[] its own judgment in assessing the Government's case." *Id.* (quoting *Johnson*, 302 F.3d at 150). Relief under this standard should be granted "sparingly and only in exceptional cases." *Id.* (quoting *Gov't of the V.I. v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987)).

Dees believes that two errors taken in combination entitle him to a new trial. First, the Government's initial theory of the case, as presented to the grand jury and as described in pre-trial disclosures, was that Dees's intent to distribute could be inferred from the quantities of cocaine and cash recovered from his pants pockets. Dees suggests that at trial, the theory of guilt shifted—the Government presented testimony from McFeaters and Smith that Dees routinely shared or bartered with the cocaine, rather than distributing it in a more "traditional" manner. This last-minute shift in strategy, according to Dees, prejudiced him by depriving him of the opportunity to investigate or debunk the claims advanced by McFeaters and Smith. Second, Dees argues that the

12

grand jury was entitled to, but did not, learn about the evidence indicating that Dees may have recently withdrawn the cash from his bank account.

The District Court considered Dees's arguments in support of his motion for a new trial and denied the motion in a written order. (App. 314–16.) We perceive no abuse of discretion. The Government is not restricted at trial to the evidence which it presents to the grand jury. *See* Fed. R. Crim. P. 16(a) (detailing Government's disclosure obligations); Fed. R. Crim. P. 16(c) (requiring prompt pretrial disclosure of previously requested but newly discovered evidence). Nor is there any indication that the Government's grand jury presentation was so defective as to create "a serious danger that a miscarriage of justice has occurred." *Brennan*, 326 F.3d at 189. In sum, because the District Court appropriately concluded that this is not the exceptional case in which relief is appropriate under Rule 33, we will affirm the District Court's denial of Dees's motion for a new trial.

IV.

The Government, as Appellant in Case No. 13-3544, contends that the District Court erred by finding the Government's documentation insufficient to establish that Dees's prior felony convictions under Pennsylvania law for "assault by prisoner" and vehicular flight qualified as crimes of violence for purposes of the "career offender"

13

designation under U.S.S.G. § 4B1.1(a).[2] Because Dees conceded at sentencing that his

Pennsylvania conviction for robbery qualified as a crime of violence, the Government

needed to persuade the District Court that at least one of these remaining two convictions

also qualified.

A "crime of violence" is defined as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that --
>
> (1)      has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2)      is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

*Id.* § 4B1.2(a). The burden is on the Government to prove career offender status by a

preponderance of the evidence. *See United States v. Howard*, 599 F.3d 269, 271–72 (3d

Cir. 2010).

---

[2] A defendant qualifies as a career offender if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a).

Recently, and not for the first time, we addressed the situation in which a statute of conviction contains multiple alternate elements, such that "certain elements of the statute fit within the definition of a crime of violence, while other alternative elements do not." *United States v. Jones*, 740 F.3d 127, 134 (3d Cir. 2014). Under those circumstances, the "modified categorical approach" directs the court to look "beyond the fact of conviction" to determine which statutory variation was the basis for the conviction. *Id.* at 133. Guidance from both the Supreme Court and our own precedent clarifies that where the prior conviction was the result of a guilty plea, the inquiry is "limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005). Because the list described in *Shepard* is non-exhaustive, the modified categorical approach permits consideration of all "reliable judicial records." *United States v. Howard*, 599 F.3d 269, 273 (3d Cir. 2010).

With these considerations in mind, we first address Dees's conviction for "assault by prisoner" under 18 Pa. Cons. Stat. Ann. § 2703, which states in pertinent part:

> A person who is confined in or committed to any [Pennsylvania detention facility] is guilty of a felony of the second degree if he, while so confined or committed or while undergoing transportation to or from such an institution or facility in or to which he was confined or committed intentionally or knowingly, commits an assault upon another

with a deadly weapon or instrument, or by any means or force likely to produce serious bodily injury.

A person is guilty of this offense if he intentionally or knowingly causes another to come into contact with blood, seminal fluid, saliva, urine or feces by throwing, tossing, spitting or expelling such fluid or material when, at the time of the offense, the person knew, had reason to know, should have known or believed such fluid or material to have been obtained from an individual, including the person charged under this section, infected by a communicable disease, including, but not limited to, human immunodeficiency virus (HIV) or hepatitis B.

18 Pa. Cons. Stat. Ann. § 2703(a) (paragraph break added). Dees does not dispute that the first prong of § 2703 "involves conduct that presents a serious potential risk of physical injury to another," U.S.S.G. § 4B1.2(a)(2), and that a conviction under this prong would thus qualify as a crime of violence. We assume, as the parties appear to, that a conviction under the second prong of § 2703 would not qualify as a crime of violence. The District Court was thus correct to apply the modified categorical approach to assess whether Dees's conviction was under the first or second prong of § 2703.

The Government sought to satisfy its burden in that respect by admitting into the record, among other things, a copy of the state-court charging document, known in Pennsylvania as an "information." In Count 1, the information charged a violation of § 2703, specifying that while incarcerated, Dees "intentionally or knowingly committed an assault upon John Benning by means or force likely to produce serious bodily injury, namely, punched the victim in the face, disarmed and pointed the victim's loaded .38

16

caliber revolver at him." (Supp. App. 130.)  A separate state-court record introduced by the Government states that Dees entered a plea of guilty to all counts of the information. (Supp. App. 129.)

The District Court faulted the Government for its failure to introduce "a plea colloquy or something else . . . to sustain the Government's burden of proof as to the exact nature" of the underlying conviction, and thus declined to find that the conviction qualified as a crime of violence.  (Supp. App. 67.)  Dees explains that ruling as follows: (1) the charging document contains only allegations; (2) the fact of the guilty plea merely indicates that Dees was convicted under § 2703 generally, because that record contained no reference to the applicable prong; (3) the possibility thus exists that Dees in fact pleaded guilty under the *second* prong of § 2703 (which presumably would not qualify as a crime of violence).  The plea colloquy, according to Dees, is therefore the only record on these facts that could establish under which prong Dees pleaded guilty.

In ostensible support of this argument, Dees directs us to our holding in *United States v. Richardson*, 313 F.3d 121 (3d Cir. 2002), in which the Government attempted to classify the defendant as an armed career criminal in part based on a prior juvenile adjudication of guilt.[3]  We held that the District Court erred in permitting the

---

[3] Although *Richardson* concerned the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), it is undisputed that the analysis under that statute is essentially the same as that applied in this context.  *Jones*, 740 F.3d at 133 n.1.

17

Government to rely on the charging document's factual assertion that the crime involved a knife, given that the adjudication of guilt could have been reached even without that finding. *Richardson*, 313 F.3d at 127–28. The facts of this case, however, are materially different. Here, the state-court records presented by the Government contained statutory language which unambiguously established that Dees was charged only under the first prong of § 2703. Further records established that Dees pleaded guilty to that charge. In light of these records, we see no possibility that Dees might in fact have pleaded guilty under the second prong of § 2703—because he was never charged with that crime in the first instance. Under the circumstances, the charging document, taken in combination with Dees's plea of guilty, satisfied the Government's burden of establishing that Dees's conviction under § 2703 qualifies as a crime of violence.

The District Court thus erred in declining to apply a "career offender" designation at Dees's sentencing. Because the record does not "show that the sentencing judge would have imposed the same sentence under a correct Guidelines range," which in this case would have been 210 to 240 months, the District Court's error was not harmless. *United States v. Langford*, 516 F.3d 205, 216 (3d Cir. 2008). Accordingly, we will vacate the sentence imposed by the District Court and remand for resentencing.[4]

---

[4] Because of our conclusion above with respect to Dees's conviction for "assault by prisoner," we need not address whether Dees's conviction for vehicular flight under 75 Pa. Cons. Stat. Ann. § 3733, also qualifies as a crime of violence. We note, however, that in *United States v. Jones*, 740 F.3d 127 (3d Cir. 2014), we concluded that a

V.

For the aforementioned reasons, we will affirm Dees's conviction but vacate the District Court's sentence entered July 16, 2013, and remand for further proceedings consistent with this opinion.

---

conviction under § 3733, whether felony or misdemeanor, "categorically presents a serious potential risk of physical injury to another, constituting a crime of violence under the sentencing guidelines." *Jones*, 740 F.3d at 137 (internal quotation marks omitted). If it becomes necessary on remand, the District Court shall consider Dees's argument that the Government waived its right to rely on *Jones*.